Evans v. Montgomery.

---

## EVANS v. MONTGOMERY ET AL.

1. **Contract:** RESCISSION: FRAUD. An action for the rescission of a contract on the ground of fraud must be commenced within five years from the time of the discovery of the fraud; and the defendant, in pleading the statute, is not bound to show a continuous residence in the State during that period; but the plaintiff, if he seek to avail himself of the exception thereto, has the burden of bringing the case within it.

| | |
|---|---|
| 50 | 325 |
| 111 | 253 |
| 50 | 325 |
| 116 | 274 |
| 50 | 325 |
| 130 | 629 |
| 50 | 325 |
| f132 | 86 |
| 50 | 325 |
| 142 | 403 |

2. **Partnership:** FIRM ACCOUNTS. Where a partner had collected accounts in favor of the firm, without making any entry of the amounts so collected, it was *held* that where the amount of such collections was ascertained he was properly chargeable therewith.

3. ――――: ――――: FAILURE TO KEEP. While the failure to keep accounts by the partner in charge of the partnership concerns might render an adjustment difficult, yet it could not be taken advantage of by a copartner who had commenced an action and asked an accounting.

4. **Contract:** RESCISSION. A party who has recognized the validity of a contract, after the discovery of an alleged fraud in its inception, cannot afterward maintain an action to rescind it on the ground of such fraud.

*Appeal from Mahaska District Court.*

WEDNESDAY, MARCH 19.

THE plaintiff and defendants entered into articles of copartnership, as follows:

"Article of agreement made and entered into this 20th day of October, A. D. 1869, by and between John Montgomery and Andrew McKey, of the county of Mahaska and State of Iowa, of the first part, and E. J. Evans, of the county and State aforesaid, of the second part—

"*Witnesseth:* That the said John Montgomery and Andrew McKey have bought of John White, of the county and State aforesaid, the property which is immediately and particularly described in a certain bond executed by John White and attested by John Warren, and bearing date of January 21, 1869, for which they agree to pay said John White the sum of twenty-eight thousand two hundred and twenty-five dollars, as is particularly described in the bond above referred to. Now, the said E. J. Evans, having by this writing agreed to assume one-half the liabilities of the said John Montgomery and McKey to the said White, and upon the payment of which sum it is hereby expressly agreed by the said John Montgomery and Andrew McKey that the deed of conveyance from John White, in whom the fee exists, shall be made to John Montgomery, Andrew McKey, and E. J. Evans, jointly, Evans holding a half-interest. It is understood that the interest already accrued upon the note referred to shall be paid by Montgomery and McKey.

"It is further agreed that the said E. J. Evans is to assume and pay one-half of the liabilities of the said Montgomery and McKey, as is shown by the books; and in consideration of E. J. Evans' assumption to pay, he is, by virtue of this article, entitled to and is now in possession of one-half of the assets of Montgomery and McKey, which are enumerated upon the books. It is understood that the profits and losses shall be mutual."

This action was commenced on the 27th day of July, 1875. The plaintiff filed an original petition, and a first and second amendment thereto. The original petition alleges, in substance, that defendants, in order to induce plaintiff to enter into said contract, falsely and fraudulently represented that

the title to the real estate referred to in said contract was in White, and that the defendants' assets exceeded their liabilities in the sum of seven thousand one hundred and sixty-seven dollars and seventy-three cents, when they well knew they were insolvent, and the title to said real estate was not in White, but in one Benjamin Roop. The first amendment to the petition alleges that at the time plaintiff entered into said contract of partnership Benjamin Roop was a silent partner with Montgomery and McKey, which fact they fraudulently concealed from plaintiff, and of which plaintiff had no knowledge until in 1872. The second amendment alleges that Montgomery fraudulently waived all defenses to a note for ten thousand dollars which White held against the firm of Evans, Montgomery & McKey, and permitted him to take judgment thereon. The final prayer for relief is as follows:

"1. The plaintiff prays the court that the contract described as exhibit "B" to plaintiff's petition may be rescinded by the decree of this court, and that plaintiff may have judgment for all moneys and property, or the value thereof, that he has paid into said firm, and on the said property and interest thereon to-wit: the sum of ten thousand dollars and costs of suit; and that the court adjudge and decree that, as between the said John Montgomery and Evans, the said E. J. Evans shall be considered simply as surety for John Montgomery on all the indebtedness of Montgomery & Co., and that all the rights and relations of principal and surety shall exist between them as to said indebtedness—the said John Montgomery to be considered the principal, and the said Evans surety for him, and for such other and further relief as shall be equitable in the premises.

"2. That if plaintiff is not entitled to a rescission of the contract, then plaintiff asks the court to decree that said partnership is dissolved, and that an account be taken of the partnership business, and that he may have judgment against the defendant John Montgomery in the sum of ten thousand

dollars and costs of suit, and for such other and further relief as may be equitable in the premises."

The defendant John Montgomery answered the original petition, denying all fraud, and alleging that all claims on account of fraud are barred by the statute of limitations. The answer further alleges that under the agreement plaintiff became indebted to defendant Montgomery, when the agreement was executed, in the sum of two thousand five hundred and ninety-three dollars and twenty-five cents, and has since become indebted in the sum of seven thousand one hundred and fifty-two dollars and sixty-two cents, and interest. Montgomery asks that there may be an accounting between himself and plaintiff, and between himself and his co-defendant McKey, and that he have judgment against plaintiff for twelve thousand dollars. Montgomery also answered, denying the allegations of the amendments to the petition. Afterward Montgomery dismissed, without prejudice, his claim for an accounting between himself and McKey.

The cause was referred to C. P. Searle, Esq., to find and report the facts, and state the accounts between the parties. The referee reported the facts and found the following conclusions of law: *First*, that the parties hereto, plaintiffs and defendants, have rescinded the contract described as exhibit "B" of the petition, and abandoned the property so far as the real estate is concerned; *second*, that the plaintiff did not, upon the discovery of fraud, at once announce his purpose to rescind the contract and adhere to it; that his cause of action is barred by the statute of limitations. The referee recommended that both the petition and the cross-petition be dismissed. Both parties excepted to this report. The court submitted the case to the referee for further report, and for a statement of the account of the partnership.

The referee submitted a second report, containing an account of the partnership affairs, and recommending a judgment in favor of the defendant Montgomery against the plaintiff for one hundred and thirty-eight dollars and twenty-two cents.

Evans v. Montgomery.

The court again submitted the cause to the referee, with ·direction to modify the report. The referee thereupon submitted a supplemental report, finding the amount due from plaintiff to the defendant Montgomery to be one thousand one hundred and ten dollars and seven cents, and recommending that defendant have judgment for that amount. The defendant moved to set aside all the reports, and for judgment against plaintiff on several items which the referee had disallowed. The plaintiff moved the court as follows:

"1. To confirm the facts found by the referee in his three reports.

"2. To set aside the recommendation of the referee for judgment against the plaintiff, for the reason that the same is contrary to the pleadings, and the facts found by the referee.

"3. To adjudge and decree—*First*, that the contract between plaintiff and defendants be rescinded; *second*, that plaintiff have judgment against the defendant John Montgomery, dismissing his counter-claim on the merits, and for five thousand dollars, for the reason that the pleadings and facts found by the referee show that plaintiff is entitled to this relief."

The court overruled the plaintiff's motion, and so far sustained the defendant's as to render judgment in favor of defendant for two thousand three hundred and twenty-two dollars and forty-five cents. The plaintiff alone appeals.

*Williams & McMillen*, for appellant.

*John F. Lacey* and *M. E. Cutts*, for appellee Montgomery.

DAY, J.—I. The parties have abandoned the contract so far as relates to the purchase of real estate referred to in it. The real estate has been sold in full satisfaction of the debt contracted in its purchase. No question pertaining to this real estate is involved in the case.

II.   The plaintiff moved to confirm the facts found by the referee in his three reports.   No question, therefore, can now be made as to the correctness of the facts reported.   The referee reported in substance that in 1865 Benjamin Roop commenced the erection of a mill and distillery upon the real estate described in the petition, of which he was the absolute owner, but being involved in debt he caused the legal title to be kept in the name of John White, to conceal the same from creditors, and to secure White for twenty-five thousand dollars, moneys advanced to complete the mill and distillery, and operate the same; that the mill and distillery were substantially completed in 1868, and in January, 1869, Benjamin Roop and John White sold to John Montgomery and A. W. McKey said real estate, together with the mills, distillery, improvements and appurtenances, and Roop, Montgomery & McKey formed a partnership to run and operate the property—Roop being a silent partner, but his interest not determinable from the evidence; that the defendants, Montgomery and McKey, induced the plaintiff to enter into the contract described as exhibit "B," by representing that John White was the absolute owner of the said property and the fee was in him, and that the partnership assets exceeded the liabilities seven thousand dollars, and by concealing from plaintiff the interest of Benjamin Roop in said property and firm.

*1. CONTRACT: rescission: fraud.*

The referee also reported the following facts:

"5.   In making such statement it is not clear from the evidence that the defendants fraudulently misrepresented the assets and liabilities; yet, one thing is certain, the defendants were sadly mistaken, as the assets did not exceed their liabilities in any sum, but the concern was bankrupt at the time, and defendants ought to have known it.

"6.   That at the February Term, 1870, of the District Court of Mahaska county, Iowa, a decree was rendered in a cause described in plaintiff's petition entitled *Phillips v. B. Roop et al.*, which decreed the fee of said real estate to be in

Evans v. Montgomery.

Benjamin Roop, and the said John White held only a mortgage interest in it, and the property subjected to a lien of five thousand dollars in favor of Phillips.

"7. That soon after this decree came out, in the spring of 1870, Benjamin Roop told this plaintiff that he, Roop, owned one-half interest in all the. said mill property; that Montgomery and McKey had sold their interest to plaintiff, and they were out; and that Roop and Evans were the owners of the property, and the defendant Montgomery could not tell plaintiff what interest he had sold him—whether one-half or one-fourth. The plaintiff had, also, by this time discovered that their personal assets were not so large and the liabilities larger than had been represented to him; therefore, plaintiff came to the conclusion that he had been defrauded, and in the latter part of May, 1870, so informed the defendants, withdrew from the firm, and left the property in the hands of defendants, and has had nothing to do with the same since that time."

"12. That while it is true that in May, 1870, plaintiff abandoned the property, leaving the same in the hands of defendants, yet there is no evidence to show that he ever tendered back to defendants the contract or a deed of conveyance, but on the other hand made several attempts to settle, and offers of compromise, playing fast and loose, holding himself in position to jump either way, in or out, as the wheel of fortune might turn."

In his second report the referee explained his twelfth finding of fact as follows: "That Mr. Evans, after he says he had concluded that the defendants had defrauded him, not only as to the real estate but as to the partnership matters, did not at once announce his determination to rescind the contract and adhere to it, as the law contemplated, but at different times made offers of compromise, offering to lose all he had put into the concern if defendants would release him from further liability, but was all the time in such a position that, if the wheel of fortune had made the real estate

valuable or the business profitable, he could have jumped in and taken advantage of the fortune."

From this finding of facts it appears that, before the latter part of May, 1870, the plaintiff had knowledge of whatever fraud was perpetrated. This action was commenced on the 27th day of July, 1875—more than five years after the discovery of the fraud   Whether the cause of action, for rescission of the contract on the ground of fraud, accrued when the fraud was perpetrated or when it was discovered, it is alike barred by the statute of limitations.   See Code, §§ 2529 and 2530.   The plaintiff claims, however, that the statute of limitations was pleaded only to the original petition, and not to the amendments thereto, and that hence the statute of limitations cannot avail as to the alleged fraud in concealing the fact that Roop had an interest in the partnership of Montgomery and McKey.   It does not appear that this question was raised in or presented to the court below.   It is true the plaintiff, in his exceptions to the report of the referee, says that the second conclusion of law is not sustained by sufficient evidence, and is contrary to the evidence and the pleadings.   But this objection applies to the second conclusion of law as an entirety.   It does not suggest any difference in this legal conclusion as applied to the original petition and the amendment thereto, nor does it intimate to the mind of the court that this legal conclusion was not applicable to the amendment, because no plea of the statute of limitations was made thereon.   If such objection had been distinctly raised the answer might have been amended in the court below. This objection is purely technical.

The original petition alleges that a fraud, in certain respects named, was perpetrated when the contract of partnership was procured.   The answer avers that the cause of action growing out of the alleged fraud is barred by the statute of limitations.   The amendment to the petition alleges the perpetration of another particular act of fraud at the time referred to in the original petition.   The original answer

seems to have been treated by referee and court as applying to this amendment. As no question that it so applied seems to have been made in the court below, that technical objection ought not to prevail when made for the first time here. It is further claimed by plaintiff that in order to sustain the plea of the statute of limitations it must affirmatively appear that the defendant Montgomery has resided in this State continuously since 1870. The cause of action arose when the fraud was perpetrated, or when it was discovered. The rule is that then the statute of limitations began to run. The exception is that the time during which a defendant is a non-resident shall not be included in computing the period of limitation. Code, § 2533. The burden of establishing this exception is upon the party who invoked its aid.

The case of *Harlin v. Stevenson*, 30 Iowa, 371, relied upon by plaintiff on this point, is not applicable. That was a case where the cause of action arose when the fraud was discovered. From that time the statute began to run. Of course, a party who claims the benefit of the statute of limitations must show when the cause of action arose. If this could not be done without showing a discovery of fraud, the burden of proof is upon him to show such discovery. The difference between that case and this is very apparent. The court properly dismissed plaintiff's action for rescission of the contract of partnership.

II. In his second report the referee charged Montgomery with three thousand six hundred and ninety-four dollars. and eighteen cents—the amount of book-account which was good at the time Evans went out of the firm, in May, 1870. Respecting this, in his third report, the referee made the following finding of facts:

2. PARTNERSHIP: firm accounts.

"The court having found in the last report heretofore filed that the charge against Montgomery of three thousand six hundred and ninety-four dollars and eighteen cents is an error, as shown by the facts found, I report that there is but little evidence as to the actual amount collected by Mont-

gomery after Evans went out. It shows that there was outstanding on the books accounts to the amount of nine thousand five hundred and forty-six dollars and eight cents, and of that amount good and collectible four thousand four hundred and ninety-one dollars and seventy-eight cents; that from that amount I deducted in my former report the sum of seven hundred and ninety-seven dollars and fifty-five cents, as expense paid out by Montgomery in closing up the affairs of the firm. I find that the evidence positively shows only in items of the amount collected to be about one thousand two hundred dollars over and above the amount allowed as expense of winding up the concern; but I find, as heretofore stated, that Montgomery, after Evans left the firm, was in the habit of collecting and settling accounts, and making no entry whatever of the transaction; that plaintiff, on cross-examination of Montgomery, asked him to make out a statement of all firm moneys collected since Evans left the mill, but it was not done, as he said it would take a long time and be difficult to do. Plaintiff next asked Montgomery to make a list of the accounts of all the responsible parties that have not been collected or settled in some way; when Montgomery gave a list, as near as he could, amounting to sixty-nine dollars and forty-four cents. I, therefore, conclude, and the presumption of law is, that Montgomery has had the benefit of all of said good accounts charged to him in my former accounts, less the sixty-nine dollars and forty-four cents; the amount charged to Montgomery, as the account now stands, being three thousand six hundred and twenty-four dollars and seventy-four cents."

The defendant moved the court "to strike out the sum of three thousand six hundred and twenty-four dollars and seventy-four cents charged against Montgomery, for the finding shows that this item is presumed and not proven, and that the referee's r̄ ʾrt shows that said claim and no part thereof has been proven, and no items thereof are reported by

the referee to have been collected, and the report shows that they were not collected."

The court rendered judgment in favor of defendant for two thousand three hundred and twenty-two dollars and forty-five cents, instead of for one thousand one hundred and ten dollars and seven cents, as recommended by the referee. While the decree does not show how the amount of the judgment was reached, yet it is apparent from the record that it was done by charging Montgomery with one thousand two hundred dollars on accounts collected, instead of with three thousand six hundred and twenty-four dollars and seventy-four cents.

It is to be observed that defendants' objection to this branch of the referee's report does not assail the correctness of the facts found, but claims that from the facts found the charge against Montgomery is incorrect. We think the court erred in modifying the report in this respect. If Montgomery collected and settled accounts without making an entry of the transaction, and was able to show that only sixty-nine dollars and forty-four cents remained uncollected out of four thousand four hundred and ninety-one dollars and seventy-eight cents of good and collectible accounts, he was, we think, properly charged with the balance.

III. Plaintiff claims that the failure of Montgomery, both before and since the dissolution, to keep an account of the transactions with the partnership property, in connection with his neglect to make an inventory of the property when plaintiff left the firm, has rendered it impossible to state the accounts between the parties, and hence no action can be maintained on the partnership account. The plaintiff commenced this action, and asked an accounting. If the balance had been found in his favor it is safe to assume that no such objection as this would have been interposed. While the failure to keep accounts renders an accurate adjustment between the parties difficult if not impossible, it will not do to say that no adjustment can be made because it is difficult, nor that no settlement will be had

because it may not be absolutely correct. Ordinarily, in the settlement of complicated accounts, it is practicable only to approximate correctness. The law never refuses redress because absolute certainty cannot be attained.

IV. The plaintiff complains of some of the credits allowed Montgomery. The referee reported that "as to the partnership account I have found it exceedingly difficult to make an equitable adjustment, from the manner in which the business was carried on, and the conflict in the testimony." As we have before stated the plaintiff moved to confirm the facts found by the referee in his three reports. We are, therefore, confined in our examination to the facts reported. From these we are unable to discover affirmatively that Montgomery has been allowed any credits to which he was not entitled. We are unable to assign any reason for any modification of the recommendations of the referee's report, accepting as the basis thereof the facts found.

The defendant should have judgment only for one thousand one hundred and ten dollars and seven cents. He may have judgment for that amount in this court if he so elect.

REVERSED.

### ON REHEARING.

BECK, CH. J.—Upon petition of appellant a rehearing was granted in this case, and it has again been submitted to us upon a re-argument.

It will be observed that plaintiff claims that he is entitled to recover for all money or property paid by him into or for the firm, for the reason that, being induced to enter into the contract by fraud, he has the right to rescind it, and a decree should be entered setting it aside. Our former opinion holds that the relief sought—the rescission of this contract—cannot be granted, for the reason that the fraud upon which plaintiff bases his right to this relief was discovered more than five years before this action was commenced, and the relief by a

decree rescinding the contract is, therefore, barred by the statute of limitations.

Upon a re-examination of the case, on the petition for rehearing, we discovered that the statement of fact as to the time of the discovery of the fraud is incorrect, and that the relief was not, therefore, barred by the statute. Thereupon we ordered a rehearing.

After a careful reconsideration of this case we are satisfied that the conclusion we reached in the foregoing opinion is correct, though not based upon the true reason.

The fraud complained of by plaintiff was discovered as early as 1872, according to the admission in the argument of his counsel. This action was commenced in 1875. 4. CONTRACT: rescission. After the discovery of the fraud, and before the institution of the suit, plaintiff gave to the defendants no notice of his intention to rescind the contract, or that he regarded it as rescinded, and that he considered himself not bound by it, but on the contrary recognized its validity by offers to defendants to surrender all he had paid upon the contract, in consideration that they would release him therefrom. Upon this state of facts plaintiff is not entitled to a rescission of the contract. His right to such relief was lost by delay in pursuing his remedy. The law required him, upon discovering the fraud, to announce and adhere to his purpose of rescinding the contract. This announcement should have been made, certainly, within a reasonable time. A delay of two or three years, and acts and declarations inconsistent with such intention, would raise the legal presumption that he ratified the contract and waived all rights to rescind it. *Rawson v. Harger*, 48 Iowa, 269; *Grymes v. Sanders et al.*, 93 U. S., 3 Otto, 55; 2 Parsons on Contracts, 278.

We find no grounds, upon our re-examination of the case, which will support a doubt of the correctness of the conclusions announced in the foregoing opinion upon other branches of the case. We adhere to our former opinion, and the judgment heretofore entered will stand undisturbed.