STATE OF IOWA v. J. H. ENGLE, Appellant.

**Embezzlement:** AGENT TO SELL LANDS *Termination of agency.* Defendant, a real estate dealer, secured a power of attorney to sell a customer's land for him and a deed to same, with the grantee left blank. He filled in the name of an employe, who executed a mortgage to the customer, and also deeded him certain Nebraska lands, recording the deed, but never actually delivering it to the customer, and later conveyed the equity to the defendant, who sold it. The customer afterwards made several offers to sell the Nebraska land, and refused to mortgage it, saying he wished to keep it clear. *Held*, that the transaction was voidable, and not void, and that the customer had by his actions ratified the same, that thus, the relation of principal and agent had been terminated, that by this ratification, the agent became owner of the land and, hence, defendant was not guilty of embezzlement in refusing to account for the proceeds of the sale of the equity in the customer's lands.

*Appeal from Clay District Court.*—HON. F. H. HELSELL, Judge.

TUESDAY, MAY 8, 1900.

THE defendant was convicted of the crime of embezzle-ment, and appeals.—*Reversed.*

THE facts upon which the conviction is based are substantially as follows: The defendant, Engle, was a real-estate agent, residing in Spencer, Iowa. In December, 1897, the prosecuting witness herein, Henry F. L. Brooks, listed with Engle, for sale, or to trade for land near Spencer, his farm in Dickinson county, Iowa. The selling price was to be thirty dollars per acre. There was talk between the two at that time that it might not be possible to make a cash sale at once, and Engle said that exchanges could often be made so as to realize the price on the second deal, if not on the first. Soon after this, Engle notified Brooks of an opportunity to trade his farm to one Smith for a stock of goods. Brooks looked the Smith stock over, and told Engle to see what he could do with it. Following this conversation, Engle informed Brooks of an opportunity to trade for a stock of goods and some horses in Sioux City. He told him that he could sell the horses for him for one thousand five hundred dollars, and that the goods could be traded for land near Spencer. Engle at the same time stated that Brooks' equity in the farm was not sufficient to cover the goods and horses, and suggested to Brooks that a house and lot in Hartley belonging to Mrs. Brooks be put into the deal. The two went to Hartley, explained the proposed trade to Mrs. Brooks, and she decided to put her Hartley property into the trade with the farm. The next day Engle, with an attorney, visited Brooks and his wife at Hartley, and procured from them deeds of the farm and the Hartley property, with the names of the grantees omitted. He also at the same

time procured the following power of attorney: "This is to certify that we have this 8th day of February, 1898, executed and delivered to J. H. Engle, of Spencer, Iowa, three deeds of conveyance, covering the following described real estate, to-wit: The Southwest $\frac{1}{4}$ of Sec. 8, Township 99, Range 38; the Northwest $\frac{1}{4}$ of Section 8, Township 99, Range 38, and lots 5 and 6, block 4, in town of Hartley, Iowa, and in each and all of said deeds the name of the grantee is left blank. Further, that the said J. H. Engle is hereby authorized and empowered to enter into contracts of sale of each and all of the said tracts of real estate for us and in our stead, and he is especially authorized and empowered to insert in each and all of said deeds the name of the purchaser or purchasers, and thereby transfer to such purchasers full and complete title to said real estate, and to each and every tract thereof. Henry F. L. Brooks. Margaret Brooks. [Seal]" Within two or three days after this transaction, Engle went to Sioux City with a handy man by the name of Chase, and bought four hundred and eighty acres of Cheyenne county, Neb., land, and paid therefor one dollar per acre, and had it deeded to Chase. Engle inserted Chase's name as grantee in the deeds he had received of Brooks and wife. Chase then executed a note for one thousand dollars payable to Brooks, secured by mortgage on the Dickinson county land, and deeded the land and town property to Mary J. Lynch, the mother-in-law of Engle, and delivered the deed to Engle. Chase also deeded the Nebraska land to Brooks. Mary J. Lynch never accepted the deeds to the Brooks property, nor did she have or claim any interest therein, and executed conveyances thereof to Engle upon his request. The deed of the Nebraska land from Chase to Brooks was properly recorded in Nebraska, but never manually delivered to Brooks, nor was it recorded by his direction. On the eleventh day of May, 1898, Engle sold and conveyed the Dickinson county farm to one George Schee, and received for the equity therein

two thousand six hundred and five dollars. In September of the same year Brooks demanded of Engle all money he had received for his Dickinson county property, which demand was refused. The money so received is the money the defendant is charged with embezzling.

*Corey & Bemis, Buck & Kirkpatrick, R. M. Wright,* and *Duffie, Gaines & Kebby* for appellant.

*Milton Remley,* Attorney General, and *Chas. A. Van Vleck,* Assistant Attorney General, for the State.

SHERWIN, J.—In the preceding statement of the case we have only given the most prominent facts. In addition thereto there are many minor ones. Taken altogether, they stamp the defendant's conduct in this transaction as being as fraudulent and vicious as any recorded in the books, and as deserving of the punishment imposed by the trial court as in any case with which we are acquainted. Notwithstanding the gross fraud perpetrated on Mr. Brooks and his wife by this defendant, we are compelled to reverse this case because of the well-settled legal principles controlling it, which we now consider.

I.  Were the deeds to Chase void absolutely, or were they voidable only? If absolutely void and of no effect, of course no title passed to Chase, and he could convey none to others. If voidable only, the title passed to Chase according to the terms of the deeds, and he might, in turn convey to another. At the time the deeds were given to Chase, if, indeed, they were ever actually delivered to him, Engle was authorized to either sell or trade the Brooks land. There is no escape from this conclusion. Brooks so testifies, in substance, and the entire record confirms the defendant's contention on this point. It is true, nothing had been said up to that time about Nebraska land, and the written power of attorney provided for a sale only, but all parties understood, and so talked, that Engle was to either sell or trade

for goods, stock or land, so that Mr. Brooks might eventually realize from his farm, and Mrs. Brooks from her home in Hartley. It clearly appears that every step taken by Engle in these transactions which culminated in his acquiring deeds to the Brooks farm was fraudulent. He bought the Nebraska land himself, and though the title thereto went to Chase, and from Chase to Brooks, it amounted to a transfer of the title from Engle to Brooks and the transactions as to the Dickinson county land were, in effect, deeds from Brooks to Engle. So that, reduced to a final analysis, the entire transaction was in reality an attempted purchase by an agent of his principals' land for a grossly inadequate consideration. It is an elementary principle of the law that an agent employed to sell or exchange property cannot himself become the buyer, without full notice to his principal. It is equally as fundamental, and also well settled by authority, that the principal may ratify such acts of his agent as do not contravene public rights or public policy. In other words, he may ratify acts which are voidable only. Bishop Contracts, section 620; Mechem, Agency, sections 111, 112. While Engle's acts were fraudulent and void if Brooks elected so to treat them, they were not absolutely void, because Brooks might legally have deeded the Dickinson county land to Engle in exchange for the Nebraska land. No question of interest to the public would have been involved in such a transaction between the two. Hence the act of Engle might be lawfully adopted or ratified by Brooks, or it might, at his election, be avoided. Story, Agency, sections 210, 211; Bishop, Contracts, sections 616, 678, 683; Mechem, Agency, section 464; Washburn, Real Property (4th ed.) 456; Story Equity Jurisprudence, section 316; *City of Findlay v. Pertz,* 13 C. C. A. 559 (66 Fed Rep. 427, 29 L. R. A. 188). In *Bassett v. Brown,* 105 Mass. 551, the facts were in many respects similar to those in this case. Brown, while acting as the agent of Bassett for the sale of valuable

land, procured a deed of it to himself, through fraud, and for a consideration which was of little value. The court says: "In either case the deed was voidable only, and not void. The title passed according to the terms of the deed, subject to the grantor's right to reject it. He might elect whether to affirm the conveyance and return the considera-tion, or to avoid it. If he would do the latter, he must re-turn the consideration, or whatever property he may have received in exchange for that which he conveyed. If, after knowledge, he continued so to deal with the property as his own, it will be treated as an affirmance by acquiescence." See, also, *Boerum v. Schenck,* 41 N. Y. 183. The same principle is recognized in *Buell v. Buckingham,* 16 Iowa, 284. It is contended by the state, however (and numerous authorities are cited in support of its position), that the written power of attorney given to Engle is controlling, and that the power conferred therein was exceeded, and hence the entire transaction was absolutely void. This is fully answered, we think, by the fact heretofore referred to, that the parties themesvles did not so intend and even if the agent's authority has been exceeded, as contended, his act was still one that his principal might ratify.

II.    Brooks was notified in March of the trade for the Nebraska land, and knew that it had been deeded to him, and the deed properly recorded. He also knew that Chase had executed a mortgage to him on the Dickinson county land securing a note for one thousand dollars, and he bor-rowed six hundred dollars of the bank, and gave this note and mortgage as collateral security for its payment. In April he notified his former tenant that he was "rid of the Dickinson county land in such a way that he had nothing more to do with it," and that he "must look to Mr. Engle hereafter for leases, and such authority as I wanted on the place." In July he caused two letters to be written to Ne-braska, making inquiries as to how the title stood, and as to the value of that land. In answer to these letters he

was informed that the title was in him, and that the land was worth about one dollar and fifty cents per acre. After receiving this information as to the value of the land Brooks and his wife saw Engle, and offered him the land for ten dollars per acre. Before this offer was made to Engle, Brooks had been with Engle to Estherville for the purpose of trading the Nebraska land for land near there. He had also been there for the same purpose with his brother-in-law, Robertson. A little later Brooks refused to execute a mortgage on the Nebraska land for the reason that he wanted to keep that land clear of incumbrance. Other circumstances might be mentioned tending to show that Brooks recognized and treated the Nebraska land as his from March until shortly before criminal proceedings were instituted against Engle in September. It does not appear that the deed to this land was ever manually delivered to Brooks, but this the law does not require. Chase had delivered it to Engle, and it had been recorded. As to Chase, the delivery was complete. *Parker v. Parker,* 56 Iowa, 111; *Adams v. Ryan,* 61 Iowa, 733; *Cecil v. Beaver,* 28 Iowa, 241. By recognizing the land as his, Brooks must be held to have assented to, and accepted this conveyance to himself. 5 Am. & Eng. Enc. Law, 248, 249, and note 5 on page 447; *Robinson v. Gould,* 26 Iowa, 89. The title to this Nebraska land then passed to Brooks, and the title to the Dickinson county land to Engle, subject only to Brooks' right to rescind the transaction upon discovery of the fraud. Until rescission, Engle held an absolute but voidable title, and could convey the same to whom he chose. Brooks never attempted to avoid the conveyance to Chase, nor offered to return the property he had received in exchange therefor. The Nebraska land to which he held title was worth from seven hundred to a thousand dollars. This he dealt with as his own long after he had full knowledge of the fraudulent nature of the transaction, and of the fact that Engle was the real purchaser, and after he knew of the deed

from Engle to Schee. In view of these facts, it is clear that the relation of principal and agent had ceased as to the Dickinson county land when Engle conveyed to Schee, and that Engle was not then bound to account to Brooks for the proceeds of that sale. See cases *supra,* and *Evans v. Montgomery,* 50 Iowa, 337. The charge of embezzlement was therefore not sustained, and a verdict of acquital should have been directed. The conclusion reached herein makes the consideration of other questions raised by the defendant unnecessary. The case is REVERSED.