FREDERICK W. CHRISTNER v. STATE.

No. A-5699.   Opinion Filed June 25, 1927.
(257 Pac. 330.)

J. B. Dudley, Chas. E. Wells, and Roy F. Lewis, for plaintiff in error.

Edwin Dabney, Atty. Gen., Smith C. Matson, Asst. Atty. Gen. (Leon S. Hirsh, of counsel), for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the superior court of Pottawatomie county on a charge of embezzlement, and was sentenced to serve a term of four years in the state penitentiary.

The prosecution was based on section 2122, Comp. Stat. 1921. Section 2122 defines embezzlement committed by a director, officer, or employee of a corporation, and section 2124 defines embezzlement by persons in a fiduciary relation generally. A brief statement of the facts will suffice. Defendant was the secretary of the Conservative Loan & Trust Company at Shawnee, Okla., hereinafter designated the corporation, and he was the active managing officer of such corporation, which was engaged in making and marketing real estate mortgage loans. It appears that this corporation had secured, sold, and assigned to investors two loans, referred to in the evidence as the Cummings loan and the Hutchinson loan. The Wichita Joint Stock Land Bank of Wichita, Kan., wrote to the corporation and inquired the amount necessary to take up these loans, and was informed by the corporation, in a letter signed by an assistant secretary, that the amount required was $9,188, if received by June 5, 1923. Said Wichita bank remitted this amount to the corporation by draft, which was cashed, and the proceeds deposited in the usual manner in the general fund of the corporation in which all moneys were carried. At the time this remittance was received by the corporation, it

was insolvent and its account overdrawn. Soon thereafter the corporation was put in the hands of a receiver, and the moneys remitted by the bank were never applied to the purpose for which they were remitted, and were never paid to discharge the mortgages, and were a loss to the Wichita bank.

The assignments of error may be summarized as follows: First. Prejudicial statements of the trial court in the presence of the jury. Second. Errors in the instructions of the court. Third. Error in admitting evidence of other transactions, and failure to limit the application of such evidence. Fourth. The insufficiency of the evidence.

There is some merit in each of the contentions advanced. In the course of the trial, the trial judge, in ruling upon objections, made statements verging on comments upon the facts and weight of the evidence. Also some of the instructions are subject to criticism. There was also evidence of other transactions explaining the general course of business, and the instructions did not limit the application of such evidence. It is doubtful, however, if these errors, standing alone, would require a reversal of the case. As they need not arise upon another trial, and, in view of the conclusions we have reached upon the assignment of insufficiency of the evidence, we do not deem it necessary to discuss these other assignments.

The sufficiency of the evidence to establish the guilt of defendant is challenged. Indulging in the reasonable inferences and deductions from the testimony of the witness, it may be said that the evidence shows that on June 5, 1923, and for a considerable period of time prior, defendant was secretary of the corporation, was a member of its board of directors, and was one of its active managing officers, the active

head of the collection department, and had a voice in the policy and management of the corporation generally; that the money remitted by the Wichita bank to the corporation for the particular purpose of paying the two loans referred to was deposited to the credit of the corporation, and was never used for the purpose for which it was remitted. Defendant testified that he was secretary of the corporation and directed generally the collection department; that the business was of great volume, the corporation having, in addition to its main office at Shawnee, offices in Muskogee, Durant, McAlester, and Ada; that it operated in forty-five or more counties of the state, and had something like $16,000,000 of loans in force, consisting of 12,000 or 14,000 separate loans, and many cash items were received and paid out daily; that a considerable part of his duties was the sale of the loans to investors such as insurance companies, institutions, brokers, savings banks, etc.; that he frequently made trips North and East for the purpose of selling loan paper, and sometimes was away as long as six months at a time; that he had no personal knowledge of the receiving by the corporation of the particular remittance upon which the charge of embezzlement is predicated, and never heard of it until after the information had been filed. Several letters and checks were introduced in evidence, but none of these were written by defendant, and no witness testified that he had personal knowledge of the transaction. The state insists that since defendant was active in the management of the corporation and head of the collection department, and that financial statements of the condition of the company were from time to time placed on his desk, apprising him of the daily receipts, expenditures, and financial condition of the corporation, that a reasonable inference of

his guilt arises, and that such evidence is sufficient to sustain the judgment.

In order to establish the crime of embezzlement, there must be evidence from which the jury may reasonably and logically find that defendant had knowledge of the receiving of this money, and that he formed an intent to misappropriate it to some use or purpose other than that for which it was remitted to the corporation; or at the least it must be shown that, under the direction of defendant, the business of the corporation was conducted and carried on for the purpose of effecting a criminal result generally, or with like knowledge was so carried on as to effect such result in the particular case. There is no claim here that the business of the corporation was conducted in an unlawful manner, nor is it suggested that the system or manner in which it was conducted was initiated by defendant, or that there ever was any criminal intent or purpose in the manner in which it was conducted. It cannot be said that defendant had an intent to misappropriate the particular money in question if he had no knowledge that the corporation had received it. If it were shown that defendant himself or some person by his direction misappropriated the moneys in question, the criminal intent might be presumed. State v. Duerksen, 8 Okla. Cr. 601, 129 P. 881, 52 L. R. A. (N. S.) 1013.

The active directing officer of a corporation is not criminally liable for the acts of the corporation in misappropriating money intrusted to the corporation, where such acts are done by some other officer or agent of the corporation, unless they act with the knowledge and under the authority of such directing officer. In the case of State v. Carmean, 126 Iowa, 291, 102 N. W. 97, 106 Am. St. Rep. 352, where the president of a corporation was sought to be held criminally

liable for the misappropriation of money received from a customer, which was misappropriated by the corporation acting by its clerks and employees, a case very similar as to state of facts to that shown by the record here, it was said:

"It is not claimed that the money which defendant is charged to have embezzled was intrusted to him personally by Roemer & Miller, or came into his hands, nor that he had any personal knowledge of its receipt, nor that he made any direction as to its disposition, nor that he derived any personal benefit from its misappropriation. Indeed, it is fully conceded that, except as defendant may be chargeable with the general conduct of the business of the company, he is in no way liable, civilly or criminally, for the failure to apply this sum of $385.50 to the payment of notes in Meickley's hands. We come, therefore, directly to the question whether defendant can be held criminally accountable for the failure of the clerks and servants of the company to apply this sum of money in the satisfaction of the notes which it was sent to pay. * * *"

The court then quoted the statute, which is in substance and meaning very similar to our statute (section 2122, supra), and, continuing, said:

"* * * Although this section in terms provides that any officer of a corporation receiving or collecting money for the use of or belonging to another, who embezzles or fraudulently converts it to his own use, is guilty of embezzlement, nevertheless the plain purpose of the statute is to provide, with reference to the officers of corporations, that they shall be criminally liable for the fraudulent conversion of the money or property of the corporation just as agents, clerks, or servants of a private person are liable for a like fraudulent conversion of the money or property of their employers, or as any person who receives money or property for the use of and belonging to another is criminally liable for fraudulent conversion to his own use of money or property thus intrusted to him. The

plain purpose of the statute is to punish those who in a fiduciary relation receive and fraudulently convert money or property intrusted to them, or which comes into their hands by virtue of such relationship. The crime of embezzlement, as generally defined by the statutes, consists essentially of the fraudulent conversion or misappropriation of property received in a fiduciary capacity. State v. Roubles, 43 La. Ann. 200, 9 So. 435, 26 Am. St. Rep. 179; U. S. v. Harper (C. C.) 33 F. 471; State v. Johnson, 49 Iowa, 141; State v. Hengen, 106 Iowa, 711, 77 N. W. 453; State v. Engle, 111 Iowa, 246, 82 N. W. 763; 2 Bishop Cr. Law, § 325. To a third person who intrusts his money to a corporation, an officer of the corporation is evidently not liable, civilly or criminally, unless by some act or neglect on his part the money is lost or misappropriated; and, in view of the concession that defendant did not, through any personal act of his, misappropriate or cause the misappropriation of the particular sum of money intrusted to the company for the payment of the notes above referred to, we are led to the inquiry, What act or omission of defendant with reference to this money was criminal? * * *"

The court then quoted the allegations of the information, and said:

"* * * We are not referred to any authority for the proposition that the officer of a corporation, no matter how great his responsibility, is criminally liable for the acts of the corporation, performed through other officers or agents, in misappropriating money. It is no doubt true that the corporation would be liable for such misappropriation by its officers; but there seems to be no reason for holding that one officer is to be held criminally accountable for the acts of another officer, nor for the acts of subordinates, unless such acts are by his direct authority and in the execution of a criminal purpose on his part. The officer cannot be criminally liable for the acts of his subordinates in a greater measure than a principal is criminally liable for the acts of his agents or servants, and it is well settled that a principal is not thus liable

for the acts of his agent or servant, even though done in the general course of the employment, unless they are directly authorized or consented to by him; for the authority to do a criminal act will not be presumed, * * *"—citing authorities.

From an examination of the evidence adduced, it is not made to appear that defendant had any personal part in the misappropriation of the moneys in question, nor that he directed or authorized the misappropriation, nor that he had personal knowledge that it was received by the corporation, either actually or constructively, nor that the conduct of the business of the corporation in its essential characteristics was illegal, or was devised or carried on for the purpose of effecting a criminal result, either generally or in the particular case. There is a failure to prove knowledge or any affirmance act on the part of defendant or any intent to misappropriate the money in question.

For the reasons assigned, the case is reversed and remanded.

DOYLE, P. J., concurs.

DAVENPORT, J., absent, not participating.