STATE, Respondent, v. TILL, et al, Appellants

(299 N. W. 454.)

(File No. 8400. Opinion filed July 30, 1941.)

W. M. Bennett, of Buffalo, and Atwater & Helm, of Sturgis, for Appellants.

Leo A. Temmey, Atty. Gen., and R. C. Riter, Asst. Atty Gen., for Respondent.

WARREN, J. The defendants, August Till and John Till, brothers, were charged with committing the crime of grand larceny on or about the 18th of October, 1938, in Harding County, South Dakota, of one unbranded cow, a yearling heifer, and a heifer calf, the property of one John Mathys. They were tried in the circuit court and the jury returned a verdict of guilty. After the various formalities in the lower court defendants perfected an appeal to this court.

Appellants by their appeal question the sufficiency of the evidence to sustain a conviction of the crime of grand larceny; that the evidence is circumstantial and supports the

inference of innocence as strongly as it does the inference of guilt. Other questions raised which we feel must work to the advantage of the appellants and a reversal of the judgment will be found later in this opinion. We gather from the record that the owner of the cattle had not branded any of his livestock, while the cattle he identified on the defendants' premises in company with the Sheriff who had obtained notice by a letter from the Sheriff of Perkins County were branded. What bearing the evidence as to branding has upon the guilt of these defendants is a question not so easily solved. We first examine the evidence concerning the possession of the three head of cattle. It would seem that there is some evidence that the owner's enclosure had been tampered with. The fence wires were twisted together and there were horse and cattle hoof prints upon the ground outside the fence. There is some evidence that the defendant August Till traveled upon the highway by automobile at and near the Mathys' place, and that he called on some of his neighbors living nearby for the purpose of purchasing cattle about the time Mathys discovered the absence of a cow and two heifers. Next we find some evidence showing that certain estrays were upon the defendants' premises not far from the ranch buildings. The location of the cattle upon defendants' premises is a distance of about 20 miles from the owner's enclosure where the State contends that the cattle were stolen. The State's evidence as to the length of time consumed by the estrays going from the owner's premises to the defendants' premises is very indefinite. The asportation by the defendants, one of the elements composing the crime of grand larceny, seems entirely absent.

 Sometime in the fore part of November, 1938, the defendant, John Till, called and reported to the Sheriff of Perkins County that there were three estrays upon his premises and the evidence shows that the estrays were out in the open and not hidden from the view of the public. Sometime later in April, 1939, the other defendant, upon his return from the West where he had worked during the winter and spring shearing sheep, called on the Sheriff of Perkins

County stating that the estrays were still there. Later on the Sheriff of Perkins County wrote to the Sheriff of Harding County that certain estrays or cattle were on the premises of the defendants. Thereafter the owner of the cattle and the Sheriff of Harding County called for the cattle. The defendant August Till rounded up the three cattle and also two calves that had been dropped that spring and turned them over to the owner. Sometime thereafter the State informed against the defendants and they were arrested for the crime of grand larceny. We believe that the evidence as disclosed by the record fully explains the possession of the animals by the defendants. If this conviction is to be sustained upon the record as made, persons caring for estrays may find themselves in a rather peculiar dilemma and may be made innocent victims through no fault of their own. We are not persuaded that the evidence in this case amounts to unexplained possession, but on the contrary we feel that the possession is fully explained by the accused.

In 2 Wharton's Criminal Law 1463 § 1144, we find the following language: "Evidence of a bona fide attempt to discover the owner may destroy the presumption of fraudulent intent. Thus where a shawl, dropped in an exhibition room, was picked up by the defendant, placed in a conspicuous situation, and afterward, not being claimed, was appropriated to his own use, it was held no larceny. So the conscientious belief of an ignorant person that a note found by him was by law his own may be received to disprove felonious intent."

At this point we are confronted with certain brands that had been placed upon the three head of cattle. Certain marks and a cutting of the ears and burned brands in the form of letters on the hip. Just what bearing this branding may establish as an element of the crime of grand larceny we feel is rather obscure for the reason that the defendants have denied placing any brands or marks upon the cattle and the State has not produced any evidence whatsoever that the brands and marks were placed upon the animals by the defendants. The State, however, would have us believe

that the finding of certain branding irons upon the premises of the defendants establishes the inference that the defendants placed the marks and brands on them. Just why the defendants would place a "B" brand upon the estrays is inconceivable to us as it is opposed to their actions in disclosing the possession upon their premises to the peace officer. In examining the evidence given by Sheriff Blackburn we find that the defendant Gus reported to him that the estrays were still there in April and that he told the Sheriff that there was a "B" brand on them. The Sheriff testified that after this last talk he wrote to Sheriff Rickey. From the evidence in the record as to this branding and marking upon the estrays it would seem that very little importance can be attached to it as an inference of guilt and in fact it indicates innocence.

There is no evidence as to what may have taken place between the indefinite time that the cattle left the owner's premises and when they were first seen upon the defendants' premises and it would therefore be mere speculation to attempt to determine what may have happened in the interim but it is not beyond a possibility that others than the accused may have performed the branding and marking operations. This we say upon the theory that if the defendants were concerned with the branding and marking of the three head of cattle, it does not seem at all likely that they would advise the sheriff two different times that they had certain estrays upon their premises.

We cannot find and we do not know of any authority requiring the defendants to explain when the branding and markings upon the animals took place. The defendants have denied the branding and marking and as the record now stands we do not believe that the fact that the owner found them with brands and marks that it is an indication of guilt. The evidence is entirely circumstantial and it would seem that we would not be doing our full duty if we were to sustain this conviction upon such weak circumstantial evidence.

In State v. Kenstler et al., 59 S. D. 441, 240 N. W. 489, this court said: "The jury might disbelieve all these wit-

nesses for the defense. But a disbelief of the evidence for the defense does not permit the jury to act upon a belief to the contrary when there is insufficient evidence to support such belief."

The facts as shown by the record in the case before us seem to fall within what we said in the foregoing quotation.

In the case of State v. Demerly, 40 S. D. 513, 168 N. W. 167, two flocks of sheep became mixed somewhat due to the negligence of the complaining party. The accused sheared some of the sheep of the complainant along with his own but upon becoming aware of the strange sheep in his pen notified the owner and allowed him to take them away. He was convicted of larceny and the verdict was reversed by the Supreme Court on the grounds of insufficiency of the evidence to support a conviction of the larceny of the sheep. The fact that he had notified the owner destroyed the presumption that there was a felonious taking of the sheep.

"It seems to us that the circumstances shown are consistent with his innocence. Every fact and circumstance relied upon by the state to establish defendant's guilt can be reasonably accounted for upon numerous hypotheses entirely consistent with the innocence of the defendant. The evidence in this case is at its best merely circumstantial, and to warrant a conviction for crime on circumstantial evidence alone, the circumstances taken together should be of a conclusive nature, and leading on the whole to a satisfactory conclusion and pointing to a moral certainty that the accused committed the offense charged, and it is invariably the rule of law that to warrant a conviction upon circumstantial evidence alone, such facts and circumstances must be shown as are consistent with each other and consistent with the guilt of the party charged, and such as cannot by any reasonable theory be true that the party charged be innocent. State v. Guffy, 50 S. D. 548, 210 N. W. 980; and State v. Guffey, 39 S. D. 84, 163 N. W. 679." State v. Czerney, 61 S. D. 172, 247 N. W. 376, 377. State v. Strain, 63 S. D. 639, 262 N. W. 237; State v. Giffen, 64 S. D. 430, 267 N. W. 229;

State v. Tarbell, 64 S. D. 330, 266 N. W. 677; State v. Johnson, 67 S. D. 459, 293 N. W. 822. See State v. Gaede, Mo. Sup., 186 S. W. 1009.

· This Court in State v. Thieme, 54 S. D. 611, 615, 224 N. W. 228 in an opinion by Judge Campbell reaffirmed the rule as to proof of crime by circumstantial evidence so aptly stated in the above State v. Guffey.

█ This Court in an early case of State v. Lindley, 13 S. D. 248, 83 N. W. 257, 258, on legal guilt said:

"The contention of the accused is, in effect, that, conceding the evidence on the part of the prosecution to be absolutely true, and drawing all the inferences therefrom that a jury might properly draw, it was not sufficient to justify or warrant the verdict of the jury. The evidence of the alleged larceny was substantially, if not entirely circumstantial. It is stated as the general rule in Wills, Circ. Ev. p. 149, that, 'to justify the inference of legal guilt from circumstantial evidence, the existence of the inculpatory facts must be absolutely incompatible with the innocence of the accused, and incapable of explanation upon any other reasonable hypothesis than that of his guilt.' Substantially the same rule is laid down in Starkie, Ev. p. 838. The same rule is referred to by Wharton in his work on Criminal Evidence (9th Ed., § 10). It is also cited with approval in Greenl. Ev. (14th Ed.), in a note to section 13a. In the text Mr. Greenleaf says: 'In civil cases, it is sufficient if the evidence, on the whole, agrees with and supports the hypothesis which it is adduced to prove, but in criminal cases it must exclude every other hypothesis but that of the guilt of the party.' In Com. v. Webster, 5 Cush. [295] 296 [52 Am. Dec. 711], the supreme court of Massachusetts, speaking by Shaw, C. J., said: 'Another rule is that the circumstances, taken together, should be of a conclusive nature and tendency, leading on the whole to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty, that the accused, and no one else, committed the offense charged. It is not sufficient that they create a probability, though a strong one; and if, therefore, assuming all the facts to be true which the

evidence tends to establish, they may yet be accounted for upon any hypothesis which does not include the guilt of the accused, the proof fails. It is essential, therefore, that the circumstances taken as a whole, and giving them their reasonable and just weight, and no more, should to a moral certainty exclude every other hypothesis.' * * *

"Neither a court nor a jury can say that the facts proven are absolutely incompatible with the innocence of the accused, or incapable of explanation upon any other reasonable hypothesis than that of his guilt. **While the facts are consistent with the guilt of the accused, they are not absolutely inconsistent with his innocence, and in such a case the accused cannot be legally convicted.**" (Emphasis ours.)

In State v. Korth, 39 S. D. 365, 164 N. W. 93, 94, this Court upon a rehearing expressed itself upon the subject of circumstantial evidence which seems most fitting when applied to the facts before us and we quote: "The evidence was mostly circumstantial, and was of such a nature that the conclusion of guilt does not logically or naturally follow therefrom. While we are of the view that there was no positive or clear error shown to have been committed on the trial, still we are of the opinion that the circumstantial evidence adduced on the trial upon the vital issue of connecting the defendant with the commission of the offense charged was uncertain, weak, and unsatisfactory to such an extent that it should not be held sufficient to produce an abiding conviction of guilt, beyond all reasonable doubt, of such a serious offense."

Much as we dislike to disturb verdicts of juries, it becomes our solemn duty in this case to reverse that justice may be meted out according to the law of our land.

 We do not believe that there is sufficient competent evidence to establish the wrongful taking, asportation, and unexplained possession to sustain the charge.

The evidence is not sufficient to sustain the conviction as the circumstantial evidence in the record upon the vital issue connecting the defendants with the commission of the offense is weak and unsatisfactory and cannot be held suffi-

cient to produce an abiding conviction of guilt beyond a reasonable doubt of such a serious offense as this.

The order and judgment appealed from are reversed.

POLLEY, P.J., concurs.
ROBERTS and RUDOLPH, JJ., concur in reversal.
SMITH, J., dissents.