165 N.W.2d 55 (1969)
STATE of South Dakota, Plaintiff and Respondent,
v.
Lester W. FLAKE, Chan Duncan, et al., conjointly, Defendants,
John E. Nelson, Defendant and Appellant.
STATE of South Dakota, Plaintiff and Respondent,
v.
Lester W. FLAKE, John Verhoef, et al., conjointly, Defendants,
John E. Nelson, Defendant and Appellant.
Nos. 10504, 10506, 10541, 10542, 10551, 10552.
Supreme Court of South Dakota.
February 17, 1969.
Willy, Pruitt & Matthews, Acie W. Matthews, Sioux Falls, for defendant and appellant John E. Nelson.
Frank L. Farrar, Atty. Gen., Pierre, H. R. Jackson, Rapid City, L. A. (Tony) Weisensee, Sp. Asst. Attys. Gen., Canton, Roger A. Schiager, State's Atty., Sioux Falls, for plaintiff and respondent.
HANSON, Judge.
This consolidated appeal by defendant, John E. Nelson, is from his conviction and sentence on 17 counts of embezzling corporate funds as alleged in two separate indictments. Two other indictments containing a corresponding number of counts charging the crime of malfeasance in corporate affairs were also submitted to the jury as lesser included offenses. The indictments conjointly charged defendant Nelson, Lester W. Flake, John Verhoef [or Chan Duncan], Adolph Preheim, Ivil *56 Lookabill, and Vernon H. Rude with such crimes. For various reasons the indictments were dismissed as to Verhoef, Duncan, Preheim, and Lookabill. Defendants Nelson and Rude were granted a severance from the trial of Lester W. Flake and were both found guilty on all 17 counts of embezzlement by the jury. After trial the sentences and judgments against Rude were set aside because of a jurisdictional defect. See affirmance in State v. Rude, S.D., 162 N.W.2d 884. On this appeal Nelson asserts insufficiency of the evidence to sustain the verdicts and other errors occurring at the trial.
The crime of embezzlement is defined as follows: "If any person being an officer, director * * * of any * * * corporation * * * fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust any property which he has in his possession or under his control in virtue of his trust * * * he is guilty of embezzlement." SDC 13.4003.
The indictments allege, in summary, that Nelson and the other named defendants conjointly, willfully, unlawfully, feloniously and fraudulently did appropriate and convert to a use not in the due and lawful execution of their trust, money owned by Commonwealth Investment Corporation by causing disbursements to be made from the assets of Commonwealth to Tri-State Thermo Panel, Inc., and all of said defendants were at all times stockholders of Tri-State Thermo Panel and as a group owned a substantial amount of stock in Tri-State Thermo Panel, and defendants, by virtue of their offices as directors of Commonwealth, did jointly enter into and did jointly and intentionally pursue a course of conduct designed to appropriate property from Commonwealth [on specific dates and amounts set forth in the several counts commencing on March 1, 1963 and concluding on May 7, 1964]. Said appropriations were made to appear by defendants as though they were loans made in the normal course of business from Commonwealth to Tri-State Thermo Panel, but in fact they were appropriations to defendants themselves, being substantial stockholders of Tri-State, and defendants being directors and stockholders of Commonwealth, contrary to SDC 11.0805[1] and said personal property was in the possession and under the control of defendants as directors of Commonwealth in virtue of their trust as such directors, the said defendants did then and there conjointly commit the crime of embezzlement contrary to SDC 13.4003.
The State had the burden of proving beyond a reasonable doubt each of the following essential elements of the crime charged:
1. That defendant Nelson had in his possession or under his control by virtue of his trust as a director of Commonwealth Investment Corporation, or jointly with other directors, personal property of the corporation;
2. That he fraudulently appropriated such personal property conjointly with other directors to a use or purpose not in the due and lawful execution of his trust by making unlawful loans to Tri-State Thermo Panel, another corporation, in which defendants had such a substantial interest *57 such loans were in effect loans to defendants themselves and were appropriations of Commonwealth funds to themselves;
3. That defendant did so without right and with specific intent to defraud and deprive Commonwealth Investment Corporation of its property.
In summary, the evidence shows the Commonwealth Investment Corporation was organized for the purpose of lending money. The defendant, John E. Nelson, a chiropractor in Sioux Falls was a stockholder. In January 1962 he became a member of the board of directors and was elected secretary-treasurer. Lester W. Flake was president, executive officer, and a member of the board of directors. Other directors were Vernon H. Rude, Adolph Preheim, Chan Duncan, Ivil Lookabill, and John Verhoef.
In December 1962 defendant Nelson, his brother Russell, Lester W. Flake, and Charles Croy had a luncheon conference to discuss an insulated panel process for making walk-in coolers. Croy was familiar with the new process and indicated it would take $10,000 to construct the first panel. During the discussion either Flake or Nelson said there would be ample financing available.
In January 1963 Tri-State Thermo Panel was incorporated to engage in the insulated panel business. It was understood that Tri-State was to obtain interim or temporary financing in the amount of $10,000 to begin operating, but its main financing or capital was to be secured by a stock issue to be handled by Donald Sandidge and the Midland Security Company, a brokerage firm. The articles of incorporation were prepared by John E. Burke, general counsel for Commonwealth at the request of Flake. Nelson signed as one of the incorporators and became a member of its board of directors and secretary. The record shows 620 shares of stock were issued as follows:

 Name of Shareholder Number of Shares
 Lester W. Flake 40
 John E. Nelson 20
 20 (for services
 rendered)
 Russell Nelson 20
 Vernon H. Rude 20
 Chan Duncan 20
 Adolph Preheim 20
 Ivil Lookabill 20
 John Verhoef 20
 Commonwealth Investment Corporation 50
 Donald Sandidge 20
 Midland Securities 50
 Irene, Jackie, and Claudia Flake 40
 Charles Croy 20
 Other persons 240

During the course of its two year existence the total cash receipts of Tri-State amounted to approximately $240,000. Of this amount $21,000 was received from sale of stock; $60,000 was proceeds from its business; and the balance was loans from Commonwealth made between June 6, 1963 and May 7, 1964. These loan transactions *58 form the basis for the various counts in the indictments.
Tri-State Thermo Panel did not prosper. Only 20 walk-in coolers were fabricated, assembled, and sold for an average price of $2,000 to $2,500 each. In the summer of 1963 Robert Maxwell was employed as general manager. Shortly after he was hired Nelson flew Croy and Maxwell to Lester Prairie, Minnesota, to inspect a plywood fabricating plant. There followed a series of luncheon meetings attended generally by Flake, Nelson, Maxwell, Rude, and others at which the affairs of Tri-State, plans for growth, and the feasibility of engaging in plywood fabricating were discussed. Thereafter, the business of Tri-State was broadened to include plywood fabricating and for this purpose special machinery was purchased, larger space secured, and additional labor employed. Nelson visited the plant on an average of twice a month and recommended a man to the general manager for employment as a salesman.
In April 1963 Nelson was advised Commonwealth had loaned $40,000 to Tri-State. Upon learning this he called Flake and John E. Burke, counsel for Commonwealth, to his home and protested the amount of such loans. He was assured by Flake no further loans would be made and Commonwealth would be secured by a transfer of some real estate owned by Tri-State. Deeds for this purpose were prepared by Burke.
In October 1963 the annual report of Commonwealth was presented to and discussed by its board of directors. The report showed an outstanding loan to Tri-State of $40,000 as of June 1, 1963. It also contained an information footnote stating Tri-State was "controlled by directors and stockholders of Commonwealth Investment Company."
Nelson testified Tri-State was placed in receivership in 1965 at which time he was shocked to learn for the first time that Commonwealth had advanced a total of $150,000 to Tri-State in the form of loans. In rebuttal, evidence by the state indicated Nelson had knowledge of loans to Tri-State in excess of $80,000 sometime during the summer of 1964.
Criminal liability is basically an individual and personal concern, therefore the courts generally restrict the criminal responsibility of a corporate officer to those criminal acts he actually committed, authorized or approved. People v. Stevens, 358 Ill. 391, 193 N.E. 154; People v. Skelly, Cal.App., 40 P.2d 304; Hartson v. People, 125 Colo. 1, 240 P.2d 907; State v. Parker, 112 Conn. 39, 151 A. 325; Clifton v. State, 1 Storey 339, 51 Del. 339, 145 A.2d 392, 68 A.L.R.2d 1266; State v. Shouse, Fla.App., 177 So.2d 724; State v. Asal, 79 Mont. 385, 256 P. 1071; State v. Pincus, 41 N.J.Super. 454, 125 A.2d 420; Hitchcock v. State, 47 Ohio App. 90, 190 N.E. 773; Christner v. State, 37 Okl.Cr. 95, 257 P. 330; State v. Ross, 55 Or. 450, 104 P. 596, 106 P. 1022, 42 L.R.A.,N.S., 601; White v. Pacific Telephone & Telegraph Co., 162 Or. 270, 90 P.2d 193; State v. Comer, 176 Wash. 257, 28 P.2d 1027; State v. Thomas, 123 Wash. 299, 212 P. 253, and see Annot., 33 A.L.R. 787. This rule is amplified and more fully expressed in the following illustrative cases:
"An officer of a corporation is not criminally liable for the acts of the corporation, performed through other officers or agents, in misappropriating money, nor is he criminally accountable for the acts of another officer, unless such acts are done by his authority or permission or with his knowledge and acquiescence and in the execution of a criminal purpose on his part." State v. Parker, 112 Conn. 39, 151 A. 325.
An "officer of a corporation, no matter how great his responsibility, is [not] criminally liable for the acts of the corporation, performed through other officers or agents, in misappropriating money. It is no doubt true that the corporation would be liable for such misappropriation *59 by its officers; but there seems to be no reason for holding that one officer is to be held criminally accountable for the acts of another officer, nor for the acts of subordinates, unless such acts are by his direct authority and in the execution of a criminal purpose on his part. The officer cannot be criminally liable for the acts of his subordinates in a greater measure than a principal is criminally liable for the acts of his agents or servants, and it is well settled that a principal is not thus liable for the acts of his agent or servant, even though done in the general course of the employment, unless they are directly authorized or consented to by him; for the authority to do a criminal act will not be presumed." State v. Carmean, 126 Iowa 291, 102 N.W. 97.
"The general rule is that where the crime charged involves guilty knowledge or criminal intent, it is essential to the criminal liability of an officer of the corporation that he actually and personally do the acts which constitute the offense, or that they be done by his direction or permission." State v. Thomas, 123 Wash. 299, 212 P. 253, 33 A.L.R. 781.
It appears that all financial arrangements between Commonwealth and Tri-State were carried out and conducted by Lester W. Flake. All loans were either made by him or at his direction. In turn, he disbursed funds of Tri-State. During this period of time Commonwealth had nearly two million dollars in outstanding loans. Nelson did not participate in these loaning operations. The evidence, in this regard, lends credence to the conclusion of this court in the companion case of State v. Dilworth, S.D., 159 N.W.2d 795, that Flake, as president of Commonwealth and Dilworth as vice president and treasurer, managed and operated such corporation virtually for their own purposes "without concern or regard for the positions of trust they held as its officers." The board of directors was never consulted about any loan to Tri-State. The minutes and records of their meetings show no approval, authorization, or ratification of any such loan. Nelson did not execute or sign any note or check. He handled no funds and received no money or anything of value from Tri-State. There is no evidence of any meeting, conversation, plan, or agreement from which it can be inferred that Nelson and the other directors of Commonwealth conspired together, or acted jointly, or in concert to unlawfully abstract funds from Commonwealth to their own use by means of the Tri-State Corporation as a conduit.
Evidence of Nelson's personal participation in the alleged crime is largely circumstantial in nature and insufficient, in our opinion, to sustain conviction. To secure a conviction on circumstantial evidence there must be more than a mere suspicion of guilt or a possibility of guilt. State v. Wolfe, 61 S.D. 195, 247 N.W. 407. The proven circumstances must not only be consistent with guilt, they must also be inconsistent with innocence. The circumstances as a whole should be of a conclusive nature pointing to a moral certainty that the accused committed the crime charged, and cannot by any reasonable theory be true and the accused be innocent. State v. Guffey, 39 S.D. 84, 163 N.W. 679; State v. Neiman, 69 S.D. 521, 12 N.W.2d 374; State v. Till, 68 S.D. 160, 299 N.W. 454; State v. Johnson, 67 S.D. 459, 293 N.W. 822; State v. Giffen, 64 S.D. 430, 267 N.W. 229; State v. Tarbell, 64 S.D. 330, 266 N.W. 677; State v. Strain, 63 S.D. 639, 262 N.W. 237; State v. Wolfe, 61 S.D. 195, 247 N.W. 407; State v. Czerney, 61 S.D. 172, 247 N.W. 376; State v. Thieme, 54 S.D. 611, 224 N.W. 228; State v. Guffy, 50 S.D. 548, 210 N.W. 980; State v. Clark, 46 S.D. 490, 194 N.W. 655; State v. Korth, 39 S.D. 365, 164 N.W. 93; State v. Lindley, 13 S.D. 248, 83 N.W. 257.
As the evidence does not "exclude to a moral certainty every other hypothesis excepting that of guilt", State v. Ferguson, *60 48 S.D. 346, 204 N.W. 652, we deem it unnecessary to consider other alleged errors.
Reversed.
ROBERTS and HOMEYER, JJ., concur.
BIEGELMEIER, P. J., and RENTTO, J., dissent.
BIEGELMEIER, Presiding Judge and RENTTO, Judge (dissenting).
Whether the evidence was sufficient to establish defendant's guilt beyond a reasonable doubt was for the jury to decide. Our function on review is to determine if it could reasonably be so convinced by the evidence which it had a right to accept. We think it could.
NOTES
[1] A civil statute providing "The purpose for which every corporation for profit shall be formed must be distinctly and definitely specified in the articles of incorporation, and it must not appropriate its funds to any other purpose nor must it loan, except as otherwise specifically provided, any of its money to any stockholder therein. If any such loan or misappropriation be made, the officers who shall make it or who shall assent thereto shall be jointly and severally liable to the extent of such loan or misappropriation and interest, for all the debts of the corporation contracted before the repayment of the sum so loaned or misappropriated." SDC 11.0805. The inclusion of this statute in the indictment, if nothing more, was confusing to the jury as they requested additional instructions on its effect. Its violation imposed civil rather than criminal liability.