STATE, Respondent, v. GUFFY, Appellant.

(210 N. W. 980.)

(File No. 5650.   Opinion filed December 6, 1926.)

1. Larceny—Evidence—Evidence Admitted in Prosecution for Larceny of Steer, Relative to Changed Licensed Plates on Borrowed Car, Held Immaterial.

In prosecution for larceny of steer, evidence realtive to changed license plates on borrowed car, which defendant was using, held immaterial; there being no showing that defendant had procured license plates or that he knew they bore different numbers.

2. Criminal Law—Evidence—Blood-stained Shoes and Overalls Held Not Properly Admitted in Evidence in Prosecution for Larceny of Steer, Being Immaterial.

Blood-stained shoes and overalls held not properly admitted in evidence in prosecution for larceny of steer, because immaterial; there being no showing of defendant's ownership of articles, or that he had ever seen or used them.

3. Criminal Law—Evidence Admitted in Prosecution for Larceny of Steer Relative to Brand on Hide Produced in Court Held Incompetent.

In prosecution for larceny of steer, evidence relative to specific brand on piece of beef hide held incompetent, branded hide being in court for inspection of jury, necessity for expert testimony on subject not being apparent.

4. Criminal Law—Circumstantial Evidence, to Warrant Conviction, Must Indicate Guilt to Moral Certainty, Be Consistent with Guilt, and Inconsistent with Innocence.

To warrant conviction for crime on circumstantial evidence, facts and circumstances shown must be consistent with each other and with guilt of accused, and be such as can on no reasonable theory be true, if defendant is innocent.

5. Larceny—Conviction for Larceny of Steer Held Not Supported by Circumstantial Evidence Introduced.

Circumstantial evidence regarding corpus delicti and defendant's connection with crime, being such as could be reasonably accounted for in manner consistent with defendant's innocence, held insufficient to sustain conviction for larceny of steer.

Gates, P. J., and Sherwood, J., dissenting.

Note.—See Headnote (1), American Key-Numbered Digest, Larceny, Key-No. 55, 36 C. J. Sec. 435, Criminal law, 16 C. J. Sec.

1036; **(2)** Criminal law, Key-No. 404(4), 16 C. J. Sec. 1226; **(3)** Criminal law, Key-No. 470, 16 C. J. Sec. 1532; **(4)** Criminal law, Key-No. 552(3), 16 C. J. Sec. 1568; **(5)** Larceny, Key-No. 55, 36 C. J. Sec. 483.

As to proof of corpus delicti by circumstantial evidence, in larceny, see notes in 68 L. R. A. 48; 28 L. R. A. (N. S.) 536; L. R. A. 1916B, 846; 7 R. C. L. 776; 2 R. C. L. Supp. 446; 4 R. C. L. Supp. 498.

Appeal from Circuit Court, Butte County; Hon. JAMES McNENNY, Judge.

William J. B. Guffy was convicted of larceny, and he appeals. Reversed.

*Harry P. Atwater,* of Sturgis, for Appellant.

*Buell F. Jones,* Attorney General, and *Bernard A. Brown,* of Pierre, for the State.

POLLEY, J. The appellant in this action is the William J. B. Guffy named as codefendant in the information in State v. Peifer, 49 S. D. 535, 207 N. W. 547. The facts proved are generally the same in both cases, though there are some facts shown in this record that do not appear in the Peifer Case, and some of the facts shown in that case have no application to the appellant in this case. But the facts stated in the Peifer Case will not be repeated here, except where necessary to understand the contentions made by appellant.

The evidence tending to connect appellant with the larceny of the Karrels steer is wholly circumstantial, for none of the witnesses claim to have seen appellant in possession of the steer, or to have seen him help butcher it, or ever to have seen him on the Peifer ranch. It is a fact, though, that a black saddle horse resembling one appellant had been riding, and a saddle resembling one he had recently been using, were found at the Peifer ranch on the evening of the day of his arrest; and it is also a fact that he borrowed the Ford car in which he was hauling the beef to Sturgis when arrested from a farmer in the immediate neighborhood of the Peifer ranch.

[1] Numerous assignments of error are predicated upon the admission and exclusion of testimony at the trial. Over proper objection by appellant, the state was permitted to prove that the license plates on the car appellant was using bore different num-

bers. How this fact was material is not suggested. The car did not belong to appellant. It was not shown that he procured the license plates, or that he knew they bore different numbers. Yet the admission of this testimony by the court over objection was equivalent to telling the jury that this fact was a circumstance tending to connect appellant with the larceny of the steer in question.

[2]. When the officers rearched the house on the Peifer ranch, they found a pair of shoes and a pair of overalls, both more or less smeared with fresh blood. Without any showing that these articles belonged to appellant, or that he had ever seen or used them, the court over proper objection admitted them in evidence. These articles in no way tend to connect appellant with the larceny complained of, and should not have been received in evidence. They were wholly immaterial to any issue in the case, but, like the license plates on the car, had a tendency to create a guilty atmosphere about the appellant, and seriously interfere with his having a fair trial.

[3] One of the officers who arrested appellant and who searched the Peifer premises testified that in the blacksmith shop on the Peifer place they found a piece of fresh beef hide; then overhead on same rafters they found another piece of fresh hide about three feet long and four or five inches wide. One of the witnesses went up to take down the block and tackle. He found, and threw down, a piece of hide rolled up in a little roll. It was about fourteen inches long, and eight or ten inches wide, and had a brand on it, but what the brand was is not disclosed. Then they found another piece of hide rolled up in the cook stove. This piece of hide also was branded. For some reason or other they assumed that this piece of hide came off from the beef that appellant had in his car when arrested. This piece of hide was preserved in alcohol and introduced in evidence at the trial, and in connection with this exhibit the following proceedings were had:

"Now, Mr. Westgate, I wish you would take this Exhibit 13 and point out to the jury the mark or brand upon it. (Objected to as not the best evidence. Overruled.)

"By the Witness: There is the circle (indicating).

"By Counsel for. Defendant: We move to strike the answer out as not responsive, and the opinion and conclusion of the witness. We object to its being constantly repeated by the prosecution for the purpose of getting it before the jury, and assign it as misconduct.

"By the Court: That is the first time I have heard it.

"Counsel for the State: Just answer the question, Mr. Westgate, which was to describe and point out to the jury the mark or. brand on the exhibit.

"By the witness: Well, there is the circle (indicating)."

To the further question the witness answered:

"There is the 'S.' I examined the size of the portions of the brand that remain on the exhibit, and compared them with the branding irons. When I took that exhibit out of the fire, the edges were burned, charred.

"By Counsel: That much of it had burned up?

"By the Court: It couldn't be charred any other way except being burned."

Proper exceptions were saved to all these rulings and remarks by the court. Another witness, on being interrogated as to what he could find on Exhibit 13, answered:

"Here is where the 'S' was to be. I couldn't see any 'K' on it, but the 'S' and the 'K' is gone. I don't know where."

The complaining witness, called to the stand to testify as to the brand on this piece of hide, said:

"There is the circle as far as we can see it, and there is the curl of the 'S.' "

But no witness that testified pretended to find the letter "K," or any part of it.

The evidence, assuming it to be competent, that this piece of hide bore the brand "Circle KS" is very meager indeed. But in our opinion this testimony was not competent. It was proper, of course to admit the piece of hide itself, but whether it bore a brand, and what brand, if any, was a question for the jury. It is not a matter that requires any special or expert knowledge. Whether there was a brand on that piece of hide, and, if so, what brand, was apparent to the eye, and no reason is shown why the jury were not just as capable of reading it as the so-called brand

experts. The Karrels' branding iron "Circle KS," had been introduced in evidence, so that they had only to compare the branding iron with the marks on the hide to know whether it was the Karrels' brand. .

[4]    The evidence in this case being wholly circumstantial, the correct rule as to the quantum of proof to justify a conviction on circumstantial evidence is correctly set out in State v. Guffey, 39 S. D. 84, 163 N. W. 679, in the following instructions given by the court in that case, the substance of which was also given in this case, namely:

"To warrant a conviction for crime on circumstantial evidence alone, the circumstances taken together should be of a conclusive nature, and leading, on the whole, to a satisfactory conclusion, and pointing to a moral certainty that the accused committed the offense charged; and it is invariably the rule of law that, to warrant a conviction upon circumstantial evidence alone, such facts and circumstances must be shown as are consistent with each other, and consistent with the guilt of the party charged, and such as cannot by any reasonable theory be true and the party charged be innocent; and in this case, if all the facts and circumstances relied upon by the state to secure a conviction can be reasonably accounted for upon any theory consistent with the innocence of the defendant, then the jury should acquit the defendant."

[6]    In this case the defendant is charged with the larceny of "one red, white-faced steer, of the goods and property of Henry Karrels." The evidence fails to show that a steer of any kind was stolen from Karrels, by any one. During the month of May, Karrels turned 331 head of cattle over to Leslie Boe to herd for the summer. They were returned to Mr. Karrels on the 8th day of October following, at which time 19 were missing, but of this number 7 head were known to have died on the range during the summer. What became of the other 12 head is not explained to any degree of certainty. But, assuming that the corpus delicti was proven, the circumstances relied upon to connect the defendant with the larceny fall far short of establishing to any moral certainty that defendant committed the theft. While it may be said that the circumstances shown are consistent with

his innocence. Every fact and circumstance relied upon by the state to establish defendant's guilt can be reasonably accounted for upon numerous hypotheses entirely consistent with the innocence of the defendant.

The judgment and order appealed from are reversed.

GATES, P. J., and SHERWOOD, J., dissent.