STATE, Respondent, v. GUFFEY, Appellant.

(230 N. W. 850.)

(File No. 6844. Opinion filed May 20, 1930.)

*Atwater & Helm,* of Sturgis, for Appellant.

*M. Q. Sharpe,* Attorney General, and *R. F. Drewry,* Assistant Attorney General, for the State.

BROWN, P. J. Defendant, along with H. D. Witherill, Roy W. Howland, and Max Peifer, was jointly charged with the larceny on September 25, 1923, of a red, white-face steer belonging to Henry Karrels. Defendant was tried separately, convicted, sentenced to a term in the penitentiary, and had served more than three years of the sentence when the judgment of conviction was reversed. State v. Guffey, 50 S. D. 548, 210 N. W. 980. The case was again tried, resulting in conviction and a sentence of five years in the penitentiary. From the judgment and an order denying a new trial, defendant appeals.

Karrels testified that in the spring of 1923 he turned over 331 head of cattle to Leslie Boe to be pastured on the range in Butte and Meade counties; that in the fall when the herd was returned by Boe it was 19 head short; that he did not know how many steers were in the bunch that he turned over nor how many steers he got back, and could not tell whether he had lost any steer in the year 1923 or not; that his cattle were branded KS surrounded by a circle. Boe testified that he ranged cattle of his own and of others along with those of Karrels, about 1,000 in all, and that when Karrels' cattle were returned they were 19 short, but he knew that at least 7 of these 19 had died, as he had found the carcasses, but did not know what had become of the other 12 head.

About 11 o'clock in the forenoon of September 25th, Fred Wesgate, deputy state sheriff, and Jake Heil, a member of the state sheriff's force, met appellant on the main highway between Sturgis and Faith, about 20 miles from Sturgis; appellant was going toward Sturgis in a Ford roadster with a homemade box. Wesgate stopped appellant, and, on examining this box, found four quarters

of beef still warm. On being asked where the hide of the animal was, appellant said "at the ranch," but declined to tell what ranch or to return to his own home to get the hide. He also requested Wesgate not to go there, as he did not want his mother to be interviewed. Wesgate and Heil accompanied appellant to Sturgis, where the meat was disposed of at a meat market. In Sturgis appellant was further questioned as to the hide, and replied: "I will tell you fellows nothing. I talked too much once and went to the pen for it." From Sturgis Wesgate and Heil with two others went to the Guffey ranch about 35 miles from Sturgis, apparently found nothing incriminating there, and went on to the Peifer place some 4 or 5 miles from the Guffey place. They arrived at Peifer's between 8 and 9 at night, found Peifer there and evidence of an animal having recently been butchered. In a blacksmith shop which was part of Peifer's buildings they found a fresh piece of hide and at the corral fresh entrails, blood, an ax and knives on which there was fresh blood and on the stove a vessel in which was a fresh beef heart being boiled. At one part of the corral, where it joined onto the barn was a crossbar or pole with a block and tackle and rope suspended from it, within twelve feet from the block and tackle was a small tire automobile track such as might be made by a Ford, Dort, or other small car, leading out at the corral gate. A small Dort car was on the premises. Wesgate and his companions left the Peifer place during a portion of the night and on their return about 4 o'clock next morning Heil took one of the lids off the stove and proceeded to poke down the ashes, and in doing this encountered a piece of partly consumed hide. There was testimony that this piece of hide showed what might have been the upper part of a KS brand, with a part of a circle around the partially burned letters. This piece of hide had been in the possession and care of two different sheriffs during the four years that intervened between the first and second trials, and was not produced on the second trial, having apparently got lost or mislaid. On Sunday, September 23d, appellant was at Milton Collins' place about 5 miles from Peifer's and there met Emil Beug and arranged to borrow Beug's Ford roadster which was on Beug's place about 4 miles distant from Collins' and which had no homemade box on it at that time. Between 2 and 3 o'clock on Monday afternoon, appellant passed the Osland place southeast of the Guffey place,

114

going east, riding a black horse with a saddle with round skirts and canvas swells. There is some evidence that Witherill had a horse and saddle of that description. The Peifer place is northeast of the Osland place. On the morning of the 26th, the Wesgate party saw a black horse and a saddle with round skirts and canvas swells in the neighborhood of the corral on the Peifer place.

 The foregoing, in substance, is a complete summary of the evidence on the part of the state. It is not materially different from the evidence on the first trial, which we held was insufficient to warrant a conviction. State v. Guffey, 50 S. D. 548, 210 N. W. 980. On the second trial there was, if anything, less evidence tending to connect defendant with the larceny of any steer, because on that trial the evidence which we held was erroneously admitted on the first trial was not offered. Whatever may have been the connection of defendant with the meat of a steer belonging to Karrels after it was killed, if any steer of Karrels was in fact killed, there is no evidence tending to connect defendant with the taking or killing of any such animal, or, in other words, with the alleged larceny, and, if defendant took the meat knowing the animal had been stolen by another or others, he would not thereby be guilty of larceny of the animal. 36 C. J. 850. The evidence raises no more than a suspicion that defendant may have had knowledge of the larceny, but, as was said in State v. Lee, 48 S. D. 29, 201 N. W. 703, 705, "Verdicts cannot be allowed to rest on mere suspicion, or upon a state of facts not shown to exist."

The judgment and order denying a new trial are reversed.

POLLEY, SHERWOOD, CAMPBELL, and BURCH, JJ., concur.