STATE, Respondent, v. CZERNEY, Appellant.

(247 N. W. 376.)

(File No. 7316.   Opinion filed March 14, 1933.)

*Ward B. Dyer* and *J. E. Tipton,* both of Lake Andes, for Appellant.

*M. Q. Sharpe,* Attorney General, *E. E. Wagner,* Assistant Attorney General, and *Paul A. Kern,* State's Attorney, of Lake Andes, for the State.

WARREN, J.   The grand jury of Charles Mix county found and returned an indictment against Henry Czerney charging him with the crime of grand larceny of 225 chickens on the 3d of January, 1931.   The defendant entered a plea of not guilty, was tried in the circuit court, found guilty, and sentenced to serve five years in the state penitentiary.   A motion for new trial was made, and from the order denying the motion for a new trial, and the judgment, the defendant has appealed to this court.

Anna Sterba, the complaining witness, occupies a farm about nine miles southeast of Lake Andes.   On the evening of the 3d day of January, 1931, she, her husband, and hired man, made a trip to Lake Andes.   They returned home at about 12 o'clock that night.   Upon their return home they noticed a few chickens around the premises, but made no investigation.   The next morning she missed about 200 of her chickens.   Shortly thereafter, she and her husband went back to Lake Andes; they looked over the places where chickens had been bought and found at defendant's place some chickens she identified as hers.

The defendant owns and operates a produce station at Lake Andes and is a large purchaser of farm produce.   He was also engaged in the trapping and purchase of furs.   On this Sunday morning when the complaining witness and her husband arrived at Lake Andes, defendant was away attending to his traps.   However, before he left town to attend to the traps, he visited his place of business and found a number of chickens wandering about in the alley back of his place of business.   He called his neighbor and boy, and with the assistance of the defendant's hired man, they drove the chickens into the defendant's coop.   There is evidence to the effect that on Saturday evening considerable business was done at the defendant's place of business in the buying of cream and poultry; that the defendant, his wife, and a hired man were occupied up until 11:30 at night in taking care of customers.   There is also testimony that there were two crates of chickens sitting back

of defendant's buildings as late as 2 o'clock in the morning; that the crates were broken and some of the chickens were out. The defendant testified that he did not know how many chickens had been purchased during the day by his wife and his hired man and that he supposed the chicken crates had been left outside when he closed up on Saturday night and that the chickens had broken out of the crates. He did not know that the chickens were stolen. When he returned on Sunday to his place of business where Mrs. Sterba and her husband were, he told them if any of the chickens were theirs to take them.

The indictment charges the defendant alone with the larceny of the 225 chickens. The state's attorney in his opening statement stated to the court and the jury that their theory was that the defendant became a principal under the statute by reason of his being an accessory to the larceny, but that other persons, among them Ted Martin, transported the chickens to Steve Cardos's hay meadow, and that a car from Czerney's place of business would go out there and pick them up at that place. During the trial this same Ted Martin, who seems to have been a character about town, and one Rush Austin, his associate, were repeatedly referred to over the objection of the defendant. The defendant has placed considerable stress upon the opening statement of the state's attorney to the jury in the state's attempt to inject into the trial the connection of Martin and Austin; and throughout the introduction of evidence, the defendant objected to the reception of testimony relating to Martin and Austin upon the grounds that the testimony was admitted out of order and that no connection was shown between the accused and Martin and Austin.

A careful review of all the evidence makes one hesitate to say that there was sufficient evidence to connect the defendant with the theft of the chickens. True, there is evidence as to possession if one is to believe that Mrs. Sterba actually identified certain chickens found within the defendant's poultry house as her property, and on that point we presume that there is enough evidence to warrant the jury so finding. The possession, however, of the chickens is fairly accounted for by the defendant as he claims to have bought chickens from several customers, and we can well imagine that any one dealing in poultry on a busy Satur-

day, and especially` on a Saturday evening, when farmers bring
their poultry and cream to market, that it is hard to keep check
upon all those who bring in and sell their poultry and produce.
In this case, there seems to be a certain evidence of checks and
stubs of checks disclosing that purchases were made. There is
testimony that some of their customers were not known to the
defendant and his help. It seems to us that the circumstances
shown are consistent with his innocence. Every fact and circum-
stance relied upon by the state to establish defendant's guilt can
be reasonably accounted for upon numerous hypotheses entirely
consistent with the innocence of the defendant. The evidence in
this case is at its best merely circumstantial, and to warrant a con-
viction for crime on circumstantial evidence alone, the circum-
stances taken together should be of a conclusive nature, and leading
on the whole to a satisfactory conclusion and pointing to a moral
certainty that the accused committed the offense charged, and it
is invariably the rule of law that to warrant a conviction upon
circumstantial evidence alone, such facts and circumstances must
be shown as are consistent with each other and consistent with
the guilt of the party charged, and such as cannot by any reason-
able theory be true that the party charged be innocent. State v.
Guffy, 50 S. D. 548, 210 N. W. 980; and State v. Guffey, 39 S. D.
84, 163 N. W. 679. In fitting the evidence, in this case, together
piece by piece in order to warrant a conviction, we find that several
of the links of the chain of evidence are weak and break under
the established test. The fact that the defendant was seen talking
to Martin and Austin in the pool hall that evening is satisfactorily
accounted for by the defendant when he stated that he did leave
his place of business for a few minutes and went to the pool hall
and bought some cigars. No one has testified that they heard him
give any directions to Martin and Austin, and it cannot be pre-
sumed, because he was seen talking in a public place, that that
alone would be a mark of guilt.

The evidence given by Mrs. Sterba that she had seen Martin
a few days before when he was at their place with a man selling
fish is of no importance. The testimony that on Sunday morning
they saw some tracks of a car close to the chicken house; that the
imprints in the ground from the car tires seemed to be peculiar
as if made by a Cornhusker tire; that the tracks were followed

to the graveled highway from the Sterba home; that on the grav-
eled highway they disappeared, but that similar tracks were again
found in the alley back of the defendant's place of business—does
not necessarily connect the defendant with the commission of the
crime.   There is also the evidence that on Sunday witnesses saw
Martin get into a car equipped with a tire that made the same kind
of an imprint upon the ground as that which had backed up to their
chicken coop.  The fact that the tire tracks may have been made by
a Cornhusker tire, or for that matter any other make of tire, and
that Martin was seen riding in a car that had a similar tire, is at
its best very unsatisfactory evidence.  In fact, the evidence relied
upon by the state is wholly unsatisfactory, yet we can readily see
that it is possible in a court where there is a prejudicial atmosphere
to obtain a conviction even with such unsatisfactory evidence.   In
State v. Lindley, 13 S. D. 248, 83 N. W. 257, 261, this court said:
"Neither a court nor jury can say that the facts proven are abso-
lutely incompatible with the innocence of the accused, or incapable
of explanation upon any other reasonable hypothesis than that of
his guilt.   While the facts are consistent with the guilt of the
accused, they are not absolutely inconsistent with his innocence,
and in such a case the accused cannot be legally convicted."   The
state's attorney was permitted over objection, in at least a mild
attempt, to argue his case to the jury rather than to state what he
expected the evidence would show.  His version of the facts was
followed up by admitting testimony at least out of order, and testi-
mony which did not connect the defendant with the theft, and
this undoubtedly created such an atmosphere of prejudice that the
defendant did not have a fair trial.   Examine the evidence from
all angles, fit all circumstances together, and put together every
fact and circumstance relied upon by the state to establish defend-
ant's guilt, and it fails to connect the defendant with the crime
but can be reasonably accounted for upon numerous hypotheses
entirely consistent with the innocence of the defendant.   There is
no evidence in the record to prove that the defendant counseled,
directed, aided, or assisted Ted Martin and Rush Austin in the lar-
ceny of the chickens; neither is there any clear and convincing evi-
dence that tends to prove that either of these parties took, stole, or
carried away said chickens.  The evidence is quite conclusive that it
was an impossibility for the defendant himself to have taken, stolen,

or carried away the chickens. It is argued that the circumstances of the broken crates containing chickens that were seen in the alley back of his place of business following the larceny is an indication of guilt. The defendant's appearance in broad, open daylight with the usual activities about town, and that he simply drove the chickens into his coops and left them there and went about his business, indicates in itself innocence. By every rule of logic no inference could be drawn except that such possession that he had was honest and that he believed it to be his property.

The state attempted and secured the conviction upon mostly circumstantial evidence which to us seems weak and unsatisfactory, and we must adhere to what we said in the case of State v. Korth, 39 S. D. 365, 164 N. W. 93, 94, as follows: "While we are of the view that there was no positive or clear error shown to have been committed on the trial, still we are of the opinion that the circumstantial evidence adduced on the trial upon the vital issue of connecting the defendant with the commission of the offense charged was uncertain, weak, and unsatisfactory to such an extent that it should not be held sufficient to produce an abiding conviction of guilt, beyond all reasonable doubt, of such a serious offense."

A careful consideration of all the testimony and an analysis of the evidence before us brings us to the conclusion that it falls far short of that class of evidence which is necessary to convince an appellate court that it is sufficient to sustain a conviction. We have briefl ytouched upon a few portions of the circumstantial evidence relied upon by the state to sustain the conviction, and we feel that it is not necessary and would not serve any useful purpose to further review the evidence.

The order and judgment appealed from are reversed.

POLLEY, J., concurs.

CAMPBELL, J., concurs specially.

RUDOLPH, P. J., and ROBERTS, J., dissent.

CAMPBELL, J. (concurring specially). The evidence in this case is entirely circumstantial. I do not believe that the circumstances proved point so clearly to the guilt of the appellant as to be unexplainable on any other reasonable hypothesis. I therefore concur in the view that the judgment should be reversed.