STATE, Respondent, v. TARBELL, Appellant.

(266 N. W. 677.)

(File No. 7823. Opinion filed April 16, 1936.)

*J. G. McFarland* and *K. C. Paterson*, both of Watertown, for Appellant.

*Walter Conway*, Atty. Gen., and *Herman L. Bode*, Asst. Atty. Gen., for the State.

WARREN, J. This is an appeal from the circuit court of Codington county from a conviction under the provisions of sections 30 (a) and 65 of chapter 251 of the Session Laws of 1929, commonly known as the "hit and run driver" law.

The defendant, one Neil Tarbell, on the evening of February 4, 1935, took his Plymouth sedan automobile from the Hanson garage, in the city of Watertown, at approximately 5:45 p. m. He drove around over some of the unpaved streets of the city, testing the body for rattles, and then drove to the William Swartz residence. He left the William Swartz residence at 6 p. m., or shortly thereafter, and drove down Sixth Avenue Southeast until he came

to Fifth street. He turned north on Fifth street and drove as far as Kemp avenue, on which he turned west and drove as far as Broadway, where he turned south for a few feet, and parked in front of the Williamson & Tarbell Drugstore. His car remained in front of the drugstore, and he remained inside until some time after 8 p. m., when the car was removed and placed in the police garage.

At approximately 6:10 p. m. on the evening of February 4, 1935, one Jacob Staib was killed while working in or about a manhole located on Fifth street, between Fourth avenue and Fifth avenue. This manhole is situated very near the center of Fifth street, about equidistant from the corner of Fourth avenue and the corner of Fifth avenue. Jacob Staib suffered severe cuts upon the face and scalp, a crushed chest and several broken bones. At the time Jacob Staib was killed there was no one in the immediate vicinity, and no one saw what caused his death. It was just at dusk, and the street lights had not been turned on. Several persons testified to having heard a crash, and a number of them hurried to the scene. When the authorities arrived on the scene, the body of Jacob Staib was lying some 60 feet north of the manhole. There was broken glass scattered south from the body to a point about 15 or 20 feet north of the manhole. The manhole cover was lying approximately 2 or 3 feet south of the manhole, and the torch that Staib had been working with was lying about 15 or 20 feet north of the manhole. Some witnesses testified to seeing a dark blue sedan with yellow wheels driving up Fifth street at the approximate time of the accident.

Shortly after arriving on the scene of the accident, the authorities sent out a call and started an immediate search for a dark blue sedan with yellow wire wheels. The defendant's car, a dark blue sedan with yellow wire wheels, was found parked in front of the drugstore at about 7:30 p. m. Upon examination, it was found that there was a deep dent in the left front fender, the front bumper was somewhat out of line on the left side, and the left headlight lens had been broken and the lamp itself bent out of line. Upon being questioned at that time, defendant admitted that he had been driving along Fifth street in the vicinity of the accident, at the approximate time Staib was killed. He said that he recalled a

sound of breaking glass, but was not conscious of having run over something or of having struck anything.

The record and briefs are long and have been prepared with much care, and the briefs have been valuable to the court in preparing its opinion. In this, as well as in other cases where the records are long, it is difficult to keep an opinion within due bounds, and we therefore state, at the outset, that we will refrain from treating all of the approximately 150 assignments of error. We will cover such portions as are controlling and necessary to a decision of the issues of vital importance to the state and defendant.

The state has the laboring oar, and, in a case where the defendant is subject to a sentence of four years' imprisonment, it seems to us to be too grave a problem for guesswork, and one must go farther than to merely speculate whether or not the defendant was guilty of the offense charged.

We now proceed to consider the sufficiency of the evidence. Counsel, as expected, do not agree upon the act or acts which caused the death of the unfortunate Staib. The defendant is privileged to urge as many propositions as the record will warrant as to what happened to cause the death of Staib. In other words, all of the facts constituting defenses, circumstances, and conduct that are in harmony with innocence. The state contends that the defendant knew that he had struck Staib, or injured some person or property. It then proceeds to theorize briefly that immediately before Staib was killed he was on the north side of the manhole, looking into it with a torch, and that the manhole cover was lying on the south side, that defendant's car came into contact with the manhole cover, causing the metallic sound that several witnesses testified to having heard, and that the next instant the car's fender or bumper hit Staib on the head as he was bent over facing south; that the wheels of the car then ran over the body, causing the excessive crushing injuries. It further contends that Staib was a large man about 6 feet in height, and weighing about 175 or 180 pounds, that he was wearing a sheepskin lined duck coat, and that he would be at least from 12 to 15 inches through from breast to back, and that Staib was evidently run over while lying face down, and that the jury would be justified in concluding beyond all reasonable doubt that the driver of a car could not surmount such

an object on the smoothly paved street without being conscious that he was driving over something far more ponderous than a "light bulb," and that the defendant therefore knew that he had struck and run over a human being, and that he failed to stop after having done so. If the state be correct as to what took place, and the jury so found, it leaves unaccounted for the broken lens which the state stressed as an important part in the trial by showing that the pieces of lens found north of the manhole were the same as the lens in the defendant's car, and that the left lamp was materially bent. We take it that the headlight of the car must have been considerably over and above the upper portion of the defendant's body, which under the state's statement was about 15 inches above the surface of the pavement. It therefore does not seem reasonable that Staib's body could have come in contact with the headlight on defendant's machine and the fender which it claimed had been dented by the impact. Therefore prejudice resulted when the state emphasized the broken glass, which it claimed was from the defendant's headlight. The defendant accounts for the broken headlight, that it could have been possible that the Aeroil fire gun, which was quite large, about $7\frac{1}{2}$ inches in diameter, and some 27 inches high, and weighing about 21 pounds, could have struck the fender and broken the lens. There is testimony to the effect that the body was discovered some 60 feet north of the manhole, and that the broken glass was only observed close to the body, and still other evidence that the tank was found some 15 to 20 feet north of the manhole, and that there was glass from there to the place where the body was found. Taking the state's theory for granted, that the man was lying face downward, it is compatible with innocence to believe that the defendant's car may have hit some portion of the tank without even striking Staib. The state attempted to show that there was some hair and human flesh in a crevice of the fender. That evidence is not at all consistent with the fact that Staib was lying face downward near the manhole. It would also seem that it would have been a comparatively easy matter for the state, who had this disputed evidence in its possession, to have submitted this evidence to persons competent to make the analysis which would be worthy of consideration, and thereafter testify concerning the substances, whether or not it was human hair, skin, or flesh.

The defendant denies that he struck the deceased with his car, and that he had any knowledge of it, and his acts at and shortly after the accident seem logical, reasonable, and compatible with innocence. The driving of his car and parking it in front of his drugstore, in a well-lighted portion of the city, gives every indication that he was not attempting to flee, cover up, or hide. On the contrary, it may be said that he was bold, and that he attempted to hide his acts by his bravery and boldness, but that argument does not impress this court as worthy of consideration. Defendant contends that all of the evidence introduced by the state, at its best, is merely circumstantial, and that, measured in the light of the authorities and former decisions of this court, he is entitled to a reversal and the setting aside of the verdict and judgment of conviction. He points out the fact that it was dark, and that one could see but a few feet ahead of the car, and that there were many conveyances, trucks, and automobiles that passed along this same highway, and that any one of them could have struck Staib, who was crouching or lying down near the manhole.

The inferences to be given to the testimony by all of the witnesses are necessarily merely circumstances, and circumstantial evidence of this class, when measured by the rule to be applied to circumstantial evidence, falls far short of the rule established by this court in State v. Guffy, 50 S. D. 548, 210 N. W. 980; State v. Ferguson, 48 S. D. 346, 204 N. W. 652; State v. Clark, 46 S. D. 490, 194 N. W. 655; State v. Korth, 38 S. D. 539, 162 N. W. 144; State v. Thieme, 54 S. D. 611, 224 N. W. 228; State v. Czerney, 61 S. D. 172, 247 N. W. 376, 377; State v. Wolfe, 61 S. D. 195, 247 N. W. 407; State v. Strain, 63 S. D. 639, 262 N. W. 237. We feel that the evidence in this case, when measured and scrutinized from all angles, and putting together every fact and circumstance relied upon by the state to establish defendant's guilt, fails to connect the defendant with the crime, but can be reasonably accounted for upon numerous hypotheses entirely consistent with the innocence of the defendant. This rule is well supported by abundant authority in this state by previous opinions, and we quote with approval from State v. Czerney, supra:

"A careful review of all the evidence makes one hesitate to say that there was sufficient evidence to connect the defendant with

the theft of the chickens. * * * It seems to us that the circumstances shown are consistent with his innocence. Every fact and circumstance relied upon by the state to establish defendant's guilt can be reasonably accounted for upon numerous hypotheses entirely consistent with the innocence of the defendant. The evidence in this case is at its best merely circumstantial, and to warrant a conviction for crime on circumstantial evidence alone, the circumstances taken together should be of a conclusive nature, and leading on the whole to a satisfactory conclusion and pointing to a moral certainty that the accused committed the offense charged, and it is invariably the rule of law that to warrant a conviction upon circumstantial evidence alone, such facts and circumstances must be shown as are consistent with each other and consistent with the guilt of the party charged, and such as cannot by any reasonable theory be true that the party charged be innocent. State v. Guffy, 50 S. D. 548, 210 N. W. 980; and State v. Guffey, 39 S. D. 84, 163 N. W. 679. In fitting the evidence, in this case, together piece by piece in order to warrant a conviction, we find that several of the links of the chain of evidence are weak and break under the established test. * * * In fact, the evidence relied upon by the state is wholly unsatisfactory, yet we can readily see that it is possible in a court where there is a prejudicial atmosphere to obtain a conviction even with such unsatisfactory evidence. In State v. Lindley, 13 S. D. 248, 83 N. W. 257, 261, this court said: 'Neither a court nor a jury can say that the facts proven are absolutely incompatible with the innocence of the accused, or incapable of explanation upon any other reasonable hypothesis than that of his guilt. While the facts are consistent with the guilt of the accused, they are not absolutely inconsistent with his innocence, and in such a case the accused cannot be legally convicted.' "

In his assignments of error the defendant has challenged our attention to the fact that the evidence is insufficient to connect the appellant with the offense charged. An examination of the evidence discloses the fact that it is vague and uncertain and does not tend to connect the defendant with the commission of the offense charged. We therefore believe that we must follow the rule adopted in State v. Korth, 39 S. D. 365, 164 N. W. 93, 94, in which we said: "The circumstantial evidence adduced on the trial upon the

vital issue of connecting the defendant with the commission of the offense charged was uncertain, weak, and unsatisfactory to such an extent that it should not be held sufficient to produce an abiding conviction of guilt, beyond all reasonable doubt, of such a serious offense."

Defendant has pointed out and alleges that prejudice was committed in the examination of one Fred Harper, who was called to the witness stand for the purpose of showing that in a similar unfortunate experience he ran into a man and killed him without being conscious of hitting him at all. In the record, the questions, objections, and remarks by the court are preserved, and are now urged as error. The following took place:

"Q. I will ask you if you had, yourself, the actual experience of running into a man with your car on the pavement of Watertown, and injuring him so that he died?

"Mr. Evans: That is objected to as incompetent, irrelevant and immaterial for any purpose, this witness is not an expert on running over people, does not prove any of the issues in this case. * * *

"The Court: You do not contend that this witness had anything to do with killing Jacob Staib?

"Mr. McFarland: No, but the same experience and a subsequent question will be very material, and it is perfectly competent and proper. The identical experience.

"The Court: I am unable to see where, if this witness ran into a man and killed him that his testimony would be of any material assistance in trying this case, and I hardly think one experience of this kind would qualify this witness as an expert. (Objection sustained. Exception noted and allowed.)

"Mr. McFarland: If the court please, we would like to ask another question of this witness, a written question. * * * (The written question was handed to the court and the state's attorney.)

"The Court: Is there any objection?

"Mr. Evans: We make the same objection that it is incompetent, irrelevant and immaterial, and further that this witness is not qualified as an expert.

"Mr. McFarland: We have authorities, not as an expert, but as to similarity of experiences and the result thereof, and subject to

cross examination that is perfectly proper and material, and in this case would be very material, not only material but as assistance to the jury, a man who has had the experience can testify to it.

"The Court: If you have any authorities I would be glad to consider them. You may present your authorities immediately.

"The Court: I have very grave doubts whether this is permissible, but the matter is before the jury and I have every confidence that the jury will be able to draw the proper inference from the evidence if there is any inference to be drawn.

"Mr. McFarland: That is the ruling on the offer, I take it?

"Mr. Evans: Let the record show that the State withdraws its objection.

"The Court: Very well, you may proceed.

"A. Yes, sir."

And further error of the court and of counsel for the state in allowing the improper and prejudicial question to be asked of the witness, Fred Harper, on cross-examination: "Q. Is that the custom here in Watertown to just run over people and go on home?"

It is unnecessary for this court to make any extended statement to show that the matters that took place were unfortunate and that it prejudiced the defendant's right to a fair and impartial trial, but to think that after what happened, and as we have pointed out from the record, that the state's attorney should ask the following question: "Q. Is that the custom here in Watertown to just run over people and go on home?" cannot be overlooked, as it was uncalled for and was highly prejudicial to the defendant. Chicago City Railway Co. v. Barron, 57 Ill. App. 469.

We have examined the entire record in this case with care and attention, and have dealt with the assignments of error which we considered vital, and are satisfied that, for the reasons stated, there must be a reversal. Other assignments of error which have been urged and considered are grave, but not as outstanding and prejudicial as the matters we have considered as crucial and decisive herein. The substantial rights of the defendant have been clearly prejudiced.

For all of the foregoing we are unable to escape the conviction that, by reason of the errors committed and the insufficiency of

the evidence as heretofore pointed out, the defendant did not receive the fair and impartial trial which is granted by the Constitution and laws of our state.

The judgment and order appealed from are reversed.

POLLEY, P. J., concurs.

CAMPBELL and RUDOLPH, JJ., concur specially.

ROBERTS, J., concurs in result.

CAMPBELL, J. (concurring specially). The evidence in this case is entirely circumstantial. The court instructed the jury without exception, and I think correctly, in part as follows: "However, in order to convict the defendant on the charge made in this case, you must find that the defendant knew that he had struck some person or that his automobile had been involved in an accident which either had injured or might have injured some person and unless defendant knew that his car had struck some person or was involved in such accident you must acquit him."

As I understand the rule, the evidence being circumstantial, it was essential that the state should introduce and prove to the satisfaction of the jury a chain of circumstances sufficient to establish beyond reasonable doubt the guilt of the defendant, and of such kind and nature as to exclude any reasonable hypothesis other than defendant's guilt. It is not enough that the circumstances shown by the state's evidence are satisfactorily explainable on the theory of the defendant's guilt, and it is not enough that a reasonable mind might believe the guilt of the defendant to be the most likely or most probable explanation of the circumstances proved. The circumstances proved must be convincing of guilt to such a degree that an attempt to explain them upon any hypothesis other than defendant's guilt would be beyond the bounds of reason. In the instant case, and under the instructions of the court, the circumstances must be such that no reasonable man could explain them upon any hypothesis except that defendant's car struck and killed the decedent and that defendant knew he had struck decedent, or at least knew that he had been involved in an accident which had injured, or might have injured, the decedent.

I think every circumstance proved by the state in this case can be true, and yet it would not be unreasonable to believe that

decedent was injured by some automobile other than defendant's; it would not be unreasonable to believe that, if defendant struck anything at all, he struck only the manhole cover or the "fire gun"; it would not be unreasonable to believe that defendant had no knowledge or consciousness that he had struck any person; and it would not be unreasonable to believe that defendant neither knew nor realized that his car had injured, or might have injured, any person whomsoever.

Admittedly, the guilt of defendant is a possible explanation of the circumstances proved, but to arrive at a conviction of that guilt beyond a reasonable doubt upon nothing more than the circumstances established by the state in this case seems to me to base a verdict upon speculation and conjecture. I do not think that any man in any case ought to be committed to the penitentiary upon proof by circumstantial evidence unless the circumstances much more completely exclude reasonable hypotheses compatible with innocence than do the circumstances proved in this case.

I think, too, that there are other errors in the record, but the insufficiency of the circumstances proved to exclude every reasonable hypothesis other than the guilt of the defendant (bearing in mind all the elements necessary to be proved under the instructions) seems to me the vital point in this case.

I concur, therefore, in the reversal.

RUDOLPH, J. (concurring specially). I am of the opinion that the evidence presented to the jury is sufficient to sustain the verdict. However, other assigned error seems to me to necessitate a reversal. In view of the fact that three of the judges think the evidence insufficient, and are content to rest their decision on that feature of the case, nothing would be gained in an expression of my views on the error which in my opinion requires a reversal.