STATE, Respondent, v. SCHELSKE, Appellant.

(269 N. W. 81.)

(File No. 7973. Opinion filed October 5, 1936.)

W. J. *Hooper*, of Gregory, for Appellant.

*Walter Conway*, Atty. Gen., *C. F. Manson*, State's Atty., of White River, and *Herman L. Bode*, Asst. Atty. Gen., for the State.

CAMPBELL, J.  During the summer and fall of 1935 defendant, Milton Schelske, a young man somewhat past 23 years of age, lived at home, as he always had, with his father, David Schelske, his mother and two sisters.  The family residence had been for some years upon the David Schelske farm, the southeast quarter of section 29 in township 40 north, range 32 west, in Mellette county, S. D.  David Schelske also leased and farmed during the season of 1935 a tract of land known as the Sieler place in section 30, a half mile west of the Schelske home.

One Otto Bertsch owned and operated during the farming season of 1935 a tract of land in section 3 of the same township, two miles east and four miles north of the Schelske place. Bertsch raised some Marquis wheat on this land in 1935 which he combined about the middle of August and stored in a small house or granary on the northeast quarter of section 10 (directly across the road to the south) known as the Beard place.  Defendant Milton Schelske assisted Bertsch in combining this wheat and hauling it to the granary on the Beard place.  Bertsch placed approximately 432 bushels of wheat in this building on the Beard place and shortly thereafter hauled out and sold 213 bushels, leaving approximately 219 bushels in the building.  On the morning of Sunday, September 29, 1935, Bertsch went across the road from his home to the Beard place to take a look at his granary.  He found a window

broken in and some of the wheat missing. Measurement disclosed that there was approximately 75 bushels of wheat left in the granary, which would make the missing amount about 144 bushels. Bertsch immediately communicated with the sheriff and state's attorney of his county and an investigation was made. Signs were discovered which made it appear that the missing wheat, or at least some of it, had been hauled away in a four-wheel trailer with tires of a certain distinctive tread and with one right wheel running on the metal rim. The tracks of this vehicle proceeded west from the Beard place and then south, and similar tracks were found entering the Schelske place and going west from the Schelske place, and in the yard of the Schelske place was found a four-wheel trailer (owned by the father, David) with tires of a tread corresponding to the marks at the Beard place, lacking the right front tire, the metal rim being shiny and presenting the appearance of having been driven for some distance without a tire. In the box body of the trailer was found a small amount of wheat which Bertsch claimed was identical with, and in fact was, his wheat. On the Sieler place leased by David Schelske was a small building or house used as a granary. Defendant, Milton Schelske had acquired this house in the town of Norris by trading for it 100 bushels of rye and had it hauled out to the Sieler place, it being claimed, however, that he acted merely as agent for his father David in that transaction. In this house or granary on the Sieler place there was found 74 bushels of wheat, which also Bertsch claims was identical with, and in fact was, his wheat. Schelske had raised no Marquis wheat in 1935. Milton Schelske had always lived at home and assisted his father in his farming operations. His father owed him for borrowed money and for wages which he had been unable to pay, and Milton himself was being pressed for payment for an automobile which he had purchased. On October 1, 1935, Milton was arrested upon the charge of grand larceny for the stealing of this Marquis wheat owned by Bertsch. He pleaded not guilty, and upon trial the jury found against him, and he was sentenced to a term of 5 years in the penitentiary. From this judgment and from a denial of his application for a new trial, he has now appealed.

██ This conviction must stand, if at all, upon circumstantial evidence, and appellant challenges the sufficiency thereof. To

recite the evidence in detail would not be helpful. We have examined the record with care and have studied the original transcript of the testimony. We are entirely mindful of the rule urged by appellant and often stated by this court (perhaps most recently repeated in State v. Giffen 64 S. D. 430, 267 N. W. 229), and of which we continue to approve, to the effect that, to warrant a conviction upon circumstantial evidence alone, such facts and circumstances must be shown as are consistent with each other and consistent with the guilt of the party charged, and such as cannot by any reasonable theory be true and the party charged be innocent. It is difficult to believe, upon the record in this case, that appellant could have committed this theft without the guilty knowledge and possibly the active participation of others. That fact, however, would not render appellant the less guilty or constitute any reason why he should not be the sole party proceeded against, and, so far as appellant is concerned, we are compelled to the conclusion that the circumstances introduced in evidence on the part of the state were sufficient, under the rule last mentioned, to justify the jury in returning a verdict of guilty if they saw fit. Appellant in his reply brief cites and bespeaks our careful consideration of the case of State v. Burke (1905) 11 Idaho, 420, 83 P. 228. We have examined the Burke Case and inspection thereof convinces us that it is readily distinguishable upon the facts in many particulars from the instant case. To undertake a detailed discussion and comparison of the two fact situations would add nothing but length to this opinion.

■ There were introduced in evidence over the objection of appellant samples of wheat taken from the granary on the Beard place, from the granary on the Sieler place, and from the trailer on the Schelske place. Upon the admission of these exhibits appellant predicates error, urging that there was no evidence whatsoever to connect appellant with the wheat in question and citing the ruling of this court in State v. Guffy (1926) 50 S. D. 548, 210 N. W. 980. In the Guffy Case defendant was charged with stealing and butchering a steer, and this court held that error was committed by introducing in evidence a blood-stained pair of shoes and pair of overalls found at the place where the animal had been slaughtered, because there was no showing whatsoever that such articles of wearing apparel belonged to Guffy or that

he had ever seen or used them. This brief fact statement discloses the marked difference between the Guffy Case and the instant case. Here the state's case depended materially upon establishing an identity between the stolen wheat (being the wheat belonging to Bertsch on the Beard place) and the wheat found in the trailer on the Schelske place and in the granary on the Sieler place, to both of which appellant had access and over both of which he had some degree of control, although he was not in exclusive possession thereof. It was entirely proper, we think, that samples of these three wheats should be submitted to the jury.

Appellant requested an instruction on circumstantial evidence substantially in the language of State v. Guffy, supra, as reiterated in the opinion of Warren, J., in State v. Czerney (1933) 61 S. D. 172, 247 N. W. 376, which instruction was refused by the court. There is no question but that the requested instruction was a correct statement of the law. The court of its own motion, however, instructed on the point as follows: "In this case there is no direct evidence as to the taking and removal of the property described in the information. That must be established, if at all, by circumstantial evidence. Circumstantial evidence is legal evidence and should be considered by the jury. The Court charges the jury, however, that before a conviction can be had under circumstantial evidence the circumstances must connect the defendant with the commission of the crime beyond a reasonable doubt, and the links in the chain of circumstances must not only connect the defendant with the commission of the crime but must exclude every other reasonable hypothesis save the guilt of the accused, and if the circumstances will support any other reasonable hypothesis than the guilt of the accused, you must return a verdict of not guilty."

We think the language of the court was a correct and sufficient statement of the law.

Appellant requested the following instruction: "To raise the presumption of guilt from the possession of the stolen property by the defendant, it is necessary that they be found in his exclusive possession. A constructive possession, like constructive notice or knowledge, though sufficient to create a civil liability, is not sufficient to hold the party responsible to a criminal charge. He can only be required to account for the possession of things

which he actually and knowingly possessed; as, for example, where they are found upon his person, or in his private apartment, or in a place of which he kept the key. If they are found upon premises owned or occupied as well by others as himself, or in a place to which others have equal facility and right of access, there seems no good reason why he, rather than they, should be charged upon this evidence alone."

█ This request was refused by the court, but the court of its own motion instructed the jury as follows: "The jury are instructed that the mere fact that the wheat which is claimed to have been stolen was found in a granary, the ownership of which is claimed by defendant's father and located on the farm of the defendant's father where the defendant made his home, a short time after it is alleged the crime was committed would not necessarily put the grain in defendant's possession unless he is shown to have exercised control over it or to have claimed ownership of it."

This is not a case where the state relies on unexplained exclusive possession of stolen goods shortly after a larceny, and we do not think the instruction requested by appellant was applicable. The finding of the wheat, however, in a trailer at appellant's home, to which trailer appellant had access and which trailer was sometimes used by attaching it to the automobile owned by appellant, and the finding of the wheat in the granary on the Sieler place, a building which appellant had acquired, whether individually or as agent for his father, to which he had access at all times and which was presently removed to the Schelske place to serve as a garage for appellant's car, were certainly circumstances which the jury was entitled to consider in determining the guilt or innocence of the appellant, and we think the instruction as given by the court adequately safeguarded the rights of appellant in this regard.

█ The court of its own motion instructed the jury as follows: "Larceny may be committed by one person acting alone or by more than one person acting together, and if more than one person act together in the actual taking and removing of the property, or aid or abet each other in the taking and removal of the property, then either or both would be guilty as principals."

To this instruction appellant has preserved an exception, urg-

ing that, while the instruction may be correct as a matter of abstract law, yet it was not applicable to and should not have been given in the instant case because "there was no contention, either in the information or the testimony, that there was anybody connected with the appellant in committing this larceny."

It is true that no person other than appellant was charged with this larceny, but it is equally true that the circumstances proved by the state would justify and almost require the inference that others participated therein or had knowledge thereof, and under the circumstances we believe the giving of the instruction was proper and that no prejudice could have resulted to appellant thereby.

Failing to find reversible error upon the assignments urged, the judgment and order appealed from must be, and they are, affirmed.

All the Judges concur.